■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BLOYS WILSON, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Westchester County, rendered June 26, 1975, convicting him of criminally selling a controlled substance in the third degree, upon a jury

verdict, and imposing sentence. Judgment reversed, on the law and the facts and as a matter of discretion in the interest of justice, and indictment dismissed. In a four-count indictment, a Westchester County Grand Jury accused Bloys Wilson, defendant-appellant, of criminally selling a controlled substance in the third degree (two counts) and of criminal possession of a controlled substance in the third degree (two counts) in violation of sections 220.39 and 200.16 of the Penal Law, respectively. A bill of particulars furnished by the People named the place of the two sales as Apartment D-2, located at 23 East 3rd Street, Mount Vernon, New York, and the dates of the occurrences as April 9 and 10, 1974. At the ensuing trial, defendant was acquitted of the April 9 counts, and found guilty on the April 10 count of criminal sale (the third count of the indictment). Since the conviction was for a class A-III felony, Wilson received a mandatory sentence of from one year to life. It is from this judgment and sentence that he appeals. The sole identification witness for the People at the trial, and at the prior *Wade* hearing, was a criminal investigator, a deputy in the Sheriff's department. He testified that he had posed as a drug-using hippie in order to worm his way into the confidence of the defendant. The record is rife with error and, of those we consider significant, the deputy played a principal role in five.

(1)

He imparted misinformation to the District Attorney as to the location of the place of the two alleged sales. This was first set forth in the bill of particulars furnished to the defense. It was repeated time and time again at both the *Wade* hearing and in the course of the trial itself. The error lay in the fact that the deputy testified the sales were consummated at Apartment D-2 at 23 East 3rd Street, Mount Vernon, New York. So egregious was the blunder, that the deputy even identified two photographs (the first a building and the second the front door of an apartment) as the locus of the sales. He went further and stated that he was present when the pictures were taken. The defense produced as a witness a woman who testified, without contradiction, that she and her four sons had lived in the building shown in the first photograph at the time of the alleged sales and for a considerable period of time both before and after, and that the door depicted in the second photograph was the door to Apartment D-2, her then apartment. So that whenever the sales were negotiated—if ever—they could not have occurred at 23 East 3rd Street.

(2)

The deputy described the defendant (from whom he had allegedly made two face-to-face and standing purchases of heroin) as being 5 feet and 10 inches tall. In court it was demonstrated to the jury that the defendant's height was 5 feet and 4 inches.

(3)

During his cross-examination at the trial, it was revealed that he had misdescribed or misidentified subjects in other cases. This fact bore heavily on his general ability to identify persons and also constituted an attack on his credibility.

(4)

When queried at a preliminary hearing in another case about the length of time he had been involved in the Mount Vernon investigation, he replied: "From the last week in April until the second week of September of 1974, and prior to that from the 15th of November until approximately the first

week in December of 1973." The charges against Wilson for sale and possession covered the 9th and 10th days of April, 1974. The deputy attempted to explain away this apparent contradiction by saying that, although not specifically assigned to do so, he had been conducting an unofficial narcotics investigation in the City of Mount Vernon during the early part of April, 1974. The inconsistency thus became a subject for impeachment purposes on the ground of credibility, and a question of fact for the jury's consideration. The trial court, however, accepted the explanation and instructed the jury to disregard any seeming inconsistency in his testimony. We think this was error (see *Larkin v Nassau Elec. R. R. Co.,* 205 NY 267).

### (5)

A copy of his records carried the date of the alleged commission of the crime as March 10 rather than April 10 of 1974. So much for the deputy. We have the added fillip of the jury's message at 11:30 P.M. that it was hopelessly deadlocked. It had been sent out to commence its deliberations at 12:15 P.M. The message read: "We sincerely feel that we are hopelessly deadlocked and will not be able to reach a verdict not only this evening, but *at* any future time." Despite this intelligence, the court, after speaking to the members of the jury, arranged to have them sequestered for the night, and ordered them to resume their deliberations at 10 o'clock in the morning. The contents of the jury note were completely ignored. No *Allen* charge was given (see *Allen v United States,* 164 US 492). The jury returned a verdict at 12:45 P.M. the next day. Deducting meal time and sleep, about 11 hours were spent in deliberation, 8 of them prior to recess the evening before. There is at least a reasonable inference that the verdict was exacted from the jury by the court's course of conduct. The verdicts are obviously inconsistent, and quite as obviously a compromise. The only justification for the verdict of guilty on the second sale lay in the fact that one of the exhibits with respect to it had a notation showing the place of sale as 25 (not 23) East 3rd Street. Throughout, however, the deputy had insisted on 23 as the house number, and throughout he said that both sales were consummated at the self-same place. How could the jury discredit his testimony as to the first sale and believe him as to the second? No attempt was made to amend the bill of particulars and, if it had been, the bill would have had to have been amended as to both sales. If a reasonable doubt exists as to the first sale—and there is no other logical basis for the jury's finding—then, too, a reasonable doubt would have to exist as to the second. Presumably, the People would argue to the contrary: that the jury made a mistake on the first finding, and was correct on the second. But the law is on the side of the defendant. A defendant must be convicted upon evidence establishing his guilt beyond a reasonable doubt. Accordingly, we dismiss the indictment pursuant to CPL 470.20 (subd 2) (for legal insufficiency of trial evidence) and CPL 470.20 (subd 5) (the verdict of guilty was against the weight of the trial evidence). Martuscello, J. P., Cohalan, Rabin and Mollen, JJ., concur.