■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL SATLOFF, Appellant. — Appeal by defendant from a judgment of the County Court, Nassau County (Delin, J.), rendered May 31, 1979, convicting him of criminal sale of a controlled substance in the sixth degree, upon a jury verdict, and imposing sentence. Judgment affirmed. This case is remitted to the County Court, Nassau County, for further proceedings pursuant to CPL 460.50 (subd 5). On October 25, 1977 the appellant made arrangements with one Seth Marcus to sell a designated quantity of "ups" or stimulants at Marcus' apartment that evening. Appellant was not aware that Marcus had been arrested for selling narcotics and the purchasers were two undercover police officers, Anderson and Giglio. Upon arrival appellant was introduced to Anderson and Giglio and he asked if they were the persons who wanted the "ups". They replied they were and Giglio asked to see them. Appellant produced a plastic baggie containing 100 white tablets which subsequently proved to be phenobarbital, a depressent not a stimulant. The selling price was $35 for the 100 pills. Giglio asked if he and Anderson could split the purchase and the appellant agreed. Anderson and appellant counted out 50 tablets which were placed in a second plastic baggie. Anderson and Giglio were each given a bag containing 50 tablets and each gave appellant $17. Anderson then inquired if appellant could get cocaine. Appellant said he could. The officers then left. On November 29, 1977 a second arrangement was made to sell Anderson cocaine. Appellant was picked up at his home by Giglio, Anderson and Marcus and was driven to a certain location where he was to purchase one-half gram of cocaine. After appellant told Anderson he had no money, Anderson gave the appellant $45 to make the purchase. The appellant exited the car and returned five minutes later with a tinfoil packet containing a white powder substance which later proved to be cocaine. He handed the packet to Anderson, who opened it to look at the substance. Anderson asked the appellant if he was taken care of and appellant replied "very well". The appellant was driven home. Appellant was subsequently importuned by Marcus, Giglio and Anderson to procure cocaine transactions but none were arranged. The appellant was arrested and charged with six criminal counts. The first three counts, pertaining to cocaine, charged appellant with criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree (possession with the intent to sell), and criminal possession of a controlled substance in the seventh degree (simple possession). Counts four and five, pertaining to phenobarbital, charged appellant with the criminal sale of a controlled substance in the sixth degree to "John Doe" and "Richard Roe", respectively. Count six charged appellant with the criminal possession of a controlled substance in the sixth degree (phenobarbital). At his jury trial, the appellant asserted the affirmative defenses of entrapment and agency. The appellant was acquitted on all charges stemming from the cocaine transaction as well as the criminal sale of phenobarbital to "Richard Roe" (Giglio) in count five. The jury returned a verdict of guilty of criminal sale of phenobarbital to "John Doe" (Anderson) and possession with intent to sell phenobarbital. The court dismissed the criminal possession charge on count six as an inclusory concurrent count (see CPL 220.20, subd 1, par [h]; 300.40, subd 3, par [b]). The appellant was sentenced to a determinate sentence of one year, which has been stayed pending appeal. On appeal, appellant primarily asserts that the finding of guilty on count four is inconsistent and repugnant to a finding of innocence on count five. Counts four and five do charge appellant with the same offense. However, the former requires that

appellant be found to have sold phenobarbital to Anderson, whereas the latter requires the appellant to have sold phenobarbital to Giglio. Thus, two independent fact findings were required. The first question presented is whether the findings were inconsistent. Anderson and the *appellant* testified that the two sales were in fact made at the same time to Giglio and Anderson. It is therefore difficult to reconcile the finding that the appellant sold to Anderson and not Giglio. Nor can it be clearly said in this case that the jury accepted only part of the testimony of the People's witnesses and rejected the testimony pertaining to the sale to Giglio (see *People v Price,* 67 AD2d 990, 991), as the appellant himself testified to giving 50 pills to Giglio and accepting $17 from him. On the basis of the record the findings are inconsistent. However, to mandate a reversal apparently inconsistent findings must be repugnant and not merely inconsistent *(People v Bullis,* 30 AD2d 470, 472). "[A]bsent a rational theory for their existence, apparently inconsistent verdicts will be held repugnant when the crimes upon which the verdicts are returned are either identical as to each of their elements or so related that an acquittal on one negatives an essential element of the crimes upon which there was conviction" *(People v Dercole,* 72 AD2d 318, 333, app dsmd 52 NY2d 956). The crimes charged in counts four and five cannot be labeled identical as two sales to two separate purchasers clearly mark their distinction. Nor does the refusal by the jury to find that the appellant sold phenobarbital to Giglio negative any element of the charged criminal sale to Anderson. Thus the findings, while inconsistent, do not reach the level of repugnancy. Appellant also asserts that the Trial Judge erred in instructing the jury on knowledge and agency. The agency charge was a proper statement of the law and appellant's claim is without merit as the court clearly instructed that the appellant could be an agent and receive personal or financial benefit from the principal (see *People v Lam Lek Chong,* 45 NY2d 64; *People v Davis,* 72 AD2d 798). Nor can it be said that the failure to marshal the facts in charging knowledge constituted reversible error on the basis of this record (see *People v Vargas,* 74 AD2d 859). Finally on the basis of the appellant's numerous prior arrests this court rejects the contention that the one-year sentence imposed upon the appellant was unduly harsh and an abuse of the trial court's discretion (see *People v Miller,* 74 AD2d 961). Gibbons, Gulotta and Cohalan, JJ., concur.

Lazer, J. P., dissents and votes to reverse the judgment and dismiss the indictment, with the following memorandum: I dissent and vote to reverse the judgment of conviction and dismiss the indictment on constraint of the repugnancy rule in this State. The jury's apparent effort to fashion a just result seems to have fallen afoul of that rule. Through a middleman, the defendant agreed to meet two individuals — later identified as narcotics officers — who were said to be interested in purchasing illicit drugs. At the designated time and place, defendant met with the pair and produced for their inspection a plastic bag containing 100 white tablets, which subsequently proved to be phenobarbital. The asking price was set at $35 for the lot. One of the purchasers suggested that defendant divide the quantity into two lots of 50 so that each could buy part. Defendant acceded to the request and, with the help of one of the purchasers, divided the tablets into two groups of 50. Having accomplished this, defendant handed each man a bag of 50 tablets and received $17 from each in return. After a subsequent unrelated cocaine transaction, defendant was arrested and charged in a six-count indictment with various crimes related to the cocaine and pill transactions. The fourth and fifth counts of the indictment charged defendant with the knowing and unlawful sale of phenobarbital, one count alleging a sale to "John Doe" and the other alleging a sale to "Richard Roe". The fictitious individuals were, of course, the undercover narcotics officers to whom defendant had made the sales. The testimony

of the defendant and the officers meshed in their recitals of the transactions forming the bases for the fourth and fifth counts of the indictment, particularly as to the fact that both sales were simultaneous and without material distinction apart from the difference in purchasers. Indeed, one of the officers conceded that he individually had sufficient funds to purchase all 100 pills but that the motivating factor behind splitting the drugs between the two officers was their desire "to get two buys instead of one." In the face of this singularly consistent testimony, the jury found defendant guilty of the sale to "John Doe", but acquitted him of the sale to "Richard Roe". The trial court refused to upset the verdicts returned despite defense counsel's prompt motion to set them aside as inconsistent (see CPL 330.30, subd 1). The defendant's primary contention on appeal is that the finding of guilt on the first of the sale counts was repugnant to the acquittal on the other. A claim of repugnancy in verdicts is a claim of trial error which must be preserved by appropriate objection (see *People v Dercole,* 52 NY2d 956). The timely objection registered in the current case thus has presented us with a claim of legal error to be decided accordingly. Although defendant's arguments in support of his repugnancy plaint are skimpy, they ultimately must rest on the proposition that, given the uniformity of testimony, there was no rational process by which the jury could have distinguished between the sales underlying the fourth and fifth counts of the indictment. Defendant's position, then, is that the crimes underlying the fourth and fifth counts of the indictment each had the identical elements so that an acquittal on the one negatived every essential element requisite to conviction on the other (see *People v Bullis,* 30 AD2d 470). Thus the jury was placed in an all-or-nothing position: they could either convict on both counts or acquit on both, but it was beyond their power to adopt the middle course they actually took without nullifying the conviction. In *People v Dercole* (72 AD2d 318, app dsmd 52 NY2d 956, *supra),* this court discerned the existence of two basic strands of the repugnancy rule. The first, illustrated by *People v Kass* (32 NY2d 856) and *People v McEaddy* (30 NY2d 519), requires reversal where the count upon which there was a conviction has identical elements to those contained in a count upon which the jury acquitted. The second strand, deduced from *People v Carbonell* (40 NY2d 948), mandates reversal of a conviction where the jury's acquittal on one charge negatives an essential element of the charge upon which there was a conviction (cf. *People v Haymes,* 34 NY2d 639, cert den 419 US 1003). An overview of the precedents in repugnancy jurisprudence makes it clear that in reviewing verdicts alleged to be repugnant the appellate court searches for a "rational theory" by which to harmonize the seemingly discordant findings and uphold the conviction (see, e.g., *People v Garcia,* 72 AD2d 356; *People v Jackson,* 69 AD2d 823; *People v Orsilini,* 69 AD2d 766). Acceptable rational theories include differences in the basic elements of the crimes (see, e.g., *People v Jackson, supra; People v Ross,* 68 AD2d 962; *People v Gross,* 51 AD2d 191; *People v Tucker,* 47 AD2d 583; *People v Pierce,* 40 AD2d 581), in the proof offered in support of the counts or in the jury's possible evaluation of the proof (see, e.g., *People v Garcia, supra; People v Orsilini, supra; People v Price,* 67 AD2d 990; *People v Dilan,* 58 AD2d 655), but the possibility that the jury made a mistake, compromised or granted leniency is unacceptable (see *People v Wilson,* 57 AD2d 908) and will not save a repugnant verdict of conviction unsupported by a rational theory based on the face of the record. Although my colleagues of the majority agree that the verdicts in issue are inconsistent, they see no repugnancy and conclude that affirmance is required. Ultimately, the difference between inconsistency and repugnancy lies in the latter's lack of a rational theory which might accommodate the inconsistency of the verdicts. In searching for a rational theory which might sustain the present conviction and bring me into concurrence with the

majority, I cannot accept as reasonable the concept that the difference in identity of the buyers in the two counts suffices to establish a rational distinction. In my view, the difference can be deemed rational only if it is shown that there was a basis for the jury to conclude (1) that the sale to "Richard Roe" never occurred, despite the testimony of both the defendant and one of the officers that it had or (2) that the defendant lacked the requisite intent on the sale to "Richard Roe", despite the testimony of the participants that the sales were so closely related temporally as to be simultaneous, or (3) that the jury found the defendant to have been entrapped by, or to have been an agent of, the purchaser on one of the two sales but not on the other (cf. *People v Rodriguez*, 74 AD2d 858). Given the striking uniformity of the trial testimony, none of these explanations has any foundation in the record and none can be deemed rational. The obvious explanation for the verdicts, of course, is that the jury was perceptive enough to see through the officers' attempt to multiply criminal charges arising out of a single transaction and their distaste for such conduct was reflected in the exercise of leniency. Nonetheless, the historical — and in my opinion, sound — mercy-dispensing power still robustly exercised by Federal juries (see, e.g., *United States v Niemiec*, 611 F2d 1207; *United States v Martorano*, 557 F2d 1, cert den 435 US 922; *United States v Serlin*, 538 F2d 737; *United States v Scheper*, 520 F2d 1355; *United States v Greene*, 497 F2d 1068, cert den 420 US 909; *United States v Fox*, 140 DC App 129, 433 F2d 1235) is not shared by New York juries because we have turned from the majority view propounded by Justice Holmes in *Dunn v United States* (284 US 390) and acceded to the demand for rationality expressed in Justice Butler's dissent in the case (284 US, at p 394). There is an inherent contradiction in the acceptance of a jury's power to exercise its discretion or good judgment to be merciful or to make dispositions which accord with common sense and equitable principles when acquitting on a single count indictment or on all counts of a multiple-count indictment, but depriving it of that power if its choice is to convict as well as acquit in a multiple-count situation where a potential for inconsistency exists (see Bickel, Judge and Jury — Inconsistent Verdicts in the Federal Courts, 63 Harv L Rev 649). In this world of increasingly complex criminal jurisprudence, New York seems to have fixed upon the proposition that multiple-count trials must be decided with a logician's precision, even when justice cries out for the exercise of a different discretion. While our appellate jurisdictions undoubtedly can accommodate to the need to search for required rational explanations, it is unfortunate that the repugnancy rule can be read to mean that our harried Trial Judges must take on the additional burden of explaining to juries the necessity of avoiding repugnant verdicts (see CPL 310.50, subd 2; *People v Salemmo*, 38 NY2d 356; cf. *People v Robinson*, 45 NY2d 448). Adhering, nevertheless, to prevailing precedents, I find that the crimes charged in the fourth and fifth counts of the indictment each have identical elements and, therefore, the acquittal on the one negatives at least one essential element requisite to conviction on the other (cf. *People v Pastore*, 46 AD2d 870). In consequence, I vote to reverse the conviction and dismiss the indictment.