THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
TOMISLAV IVISIC, Appellant.

Second Department, September 6, 1983

APPEARANCES OF COUNSEL

*William E. Hellerstein* (*Thomas H. Busch* and *Andrew C. Fine* of counsel), for appellant.

*John J. Santucci, District Attorney* (*Michael J. Connolly* of counsel), for respondent.

OPINION OF THE COURT

TITONE, J.

Under an indictment filed March 4, 1976, defendant Tomislav Ivisic was charged with murder in the second degree for fatally shooting one Peter Brcic with a loaded pistol. He was also charged under the same indictment with criminal possession of a weapon in the second degree and assault in the second degree. After trial the jury convicted him of manslaughter in the first degree (as a lesser included offense under the second degree murder

count), criminal possession of a weapon in the second degree, and assault in the third degree. On appeal defendant contends that the trial court erred in refusing to charge as lesser included offenses under the second degree murder count, the crimes of manslaughter in the second degree and criminally negligent homicide.

### THE FACTS

At the outset it must be stated that a proper analysis of the issue presented pertaining to the trial court's refusal to charge manslaughter in the second degree and criminally negligent homicide requires a presentation of two versions of the incident advanced by the parties.

On Saturday, February 21, 1976, at about 7:15 P.M., John Barac, proprietor of a small store on 28th Avenue in Astoria, Queens, was in the process of closing up for the evening. With him at the time were fellow Croations, Peter Brcic (the deceased) and Matthew Drajik. At the same time Marie Brady was standing near the corner of Steinway Street and 28th Avenue.

*John Barac's version* (for the People): According to Barac, while he, Brcic and Drajik were in front of the store, defendant approached and began to quarrel with Brcic. During the argument he called Brcic a Communist and also used obscene language. Brcic responded in a similar vein. After an ensuing scuffle between them in which Brcic gained the advantage, the defendant started to walk toward Steinway Street. At this point Barac returned to the store to finish cleaning up. However, upon hearing three or four shots, he turned and saw Brcic falling, and defendant standing 10 or 15 feet away holding a gun at chest level.

One of the bullets struck Brcic causing his death. Another of the bullets grazed Marie Brady, who was standing near the corner of Steinway Street and 28th Avenue.

*Defendant's version:* According to defendant, he went to Barac's store to pick up some tobacco he had ordered the previous week. While there, and without his provoking anyone, Barac, Brcic and Drajik encircled him. The first two knocked him down and beat him and Brcic stated he would kill him. After being so threatened, defendant took out a gun and fired it several times to scare his attackers.

He insisted that he did not aim at anyone nor did he intend to injure or kill Brcic.

### THE LAW

Provisions contained in the following statutes are relevant on the issue of the trial court's refusal to instruct the jury as to the crimes of manslaughter in the second degree and criminally negligent homicide:

*Section 125.25 of the Penal Law, murder in the second degree:*

"A person is guilty of murder in the second degree when * * *

"2. Under circumstances evincing a depraved indifference to human life, he *recklessly engages in conduct* which creates a grave risk of death to another person, and thereby causes the death of another person". (Emphasis supplied.)

*Section 125.15 of the Penal Law, manslaughter in the second degree:*

"A person is guilty of manslaughter in the second degree when:

"1. He *recklessly* causes the death of another person". (Emphasis supplied.)

*Section 125.10 of the Penal Law, criminally negligent homicide:*

"A person is guilty of criminally negligent homicide when, *with criminal negligence,* he causes the death of another person." (Emphasis supplied.)

*CPL 1.20:*

"37. 'Lesser included offenses.' When it is impossible to commit a particular crime *without concomitantly committing, by the same conduct, another offense of lesser grade or degree,* the latter is, with respect to the former, a 'lesser included offense.'" (Emphasis supplied.)

*CPL 300.50:*

"1. In submitting a count of an indictment to the jury, the court in its discretion may, in addition to submitting the greatest offense, which it is required to submit, submit in the alternative any lesser included offense if there is a

reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater. *If there is no reasonable view of the evidence which would support such a finding, the court may not submit such lesser offense.* Any error respecting such submission, however, is waived by the defendant unless he objects thereto before the jury retires to deliberate.

"2. *If the court is authorized by subdivision one to submit a lesser included offense and is requested by either party to do so, it must do so.* In the absence of such a request, the court's failure to submit such offense does not constitute error * * *

"4. Whenever the court submits two or more offenses in the alternative pursuant to this section, it must instruct the jury that it may render a verdict of guilty with respect to any one of such offenses, depending upon its findings of fact, but that it may not render a verdict of guilty with respect to more than one. A verdict of guilty of any such offense is not deemed an acquittal of any lesser offense submitted, but is deemed an acquittal of every greater offense submitted." (Emphasis supplied.)

### DETERMINATION ON APPEAL

In *People v Green* (56 NY2d 427), Judge MEYER, writing for the majority, set forth a two-tiered analysis to determine whether a crime is a lesser included offense under the foregoing provisions of the CPL. The analysis includes (p 430). "(1) considering in the abstract the Penal Law definition *of the crime charged in the indictment* in relation to the Penal Law definition of the *claimed lesser included offense,* is it theoretically impossible to commit the greater crime without at the same time committing the lesser; (2) is there a reasonable view of the evidence in the particular case that would permit the jury to conclude that the defendant committed the lesser but not the greater offense." (Emphasis supplied.)

Before applying the first tier of the test enunciated in *Green* (*supra*) to the instant case, it is necessary to identify the exact subdivision of the Penal Law to which the crime charged (murder in the second degree) refers. This is

consistent with the further admonition of Judge MEYER in the *Green* case that (pp 430-431): "[t]he impossibility element [1st tier] speaks not to all the variations of the greater offense that are detailed in a Penal Law section with numerous subdivisions, but only to the subdivision which the particular act or omission referred to in the indictment brings into play."

(1) *Manslaughter in the second degree as a lesser included offense.*

In applying the first tier of the analysis in *Green* to the instant case, it is essential that there be a comparison of the definitions of murder in the second degree as charged in the indictment, and manslaughter in the second degree, which is the claimed lesser included offense. According to the definitions of the two crimes, each requires two identical elements necessary to their commission, i.e., an underlying conduct (recklessness) and the result (death). The only distinction between the two crimes is the mental state of the accused. Despite the fact that the degree of mental culpability specified for each crime varies, the CPL definition of "lesser included offense" is satisfied since the lower culpable mental state of the crime of manslaughter in the second degree as set forth in subdivision 1 of section 125.15 of the Penal Law is necessarily included in the higher form of mental culpability of murder in the second degree, as set forth in subdivision 2 of section 125.25 of the Penal Law (i.e., "[u]nder circumstances evincing a depraved indifference to human life").

A person who, with a "depraved indifference to human life" recklessly engages in conduct which "creates a grave risk of death to another person", also, by included definition, "recklessly causes" the death. However, the murder prescription requires more than recklessly causing death. The murder definition requires conduct with depraved indifference *plus* recklessness. This is conduct of graver culpability, and is the kind which has been rather well understood at common law to involve something more serious than mere recklessness alone, which has had an incidental tragic result (*People v Poplis,* 30 NY2d 85, 89).

Turning to the second tier of the test in *Green,* it should initially be noted that it requires a determination as to

whether a reasonable view of the evidence in a case would permit a jury to conclude that the defendant committed the lesser offense but not the greater. The question is not whether the court is persuaded as to the commission of either crime but rather, could the jury reasonably conclude that the lesser offense was committed (*People v Green, supra*).

As is evident from the trial record, each side's version of the incident is substantially at variance. According to the People, defendant initiated the melee, was the aggressor from the outset, and shot the victim when the latter walked away after the scuffle had ended. Defendant, on the other hand, claimed he was attacked by the victim, the store owner, and a third person, when he went to the store to buy tobacco, and that he only fired the shots to scare his attackers away.

In our opinion, the defendant's version of the altercation could have reasonably been believed by the jury. The jury may logically have found that although defendant's firing of the weapon under the circumstances was reckless, his actions did not evince a wanton or callous (depraved) disregard or indifference to human life, since he fired the weapon not to injure Brcic, but merely to scare his attackers away. It should also be noted that the testimony of the deputy medical examiner that the bullet which killed Brcic traveled down to up, lends credence to defendant's testimony that he fired while he was on the ground, and weakens the testimony of John Barac, the prosecution's witness, that defendant at the time was holding the weapon at chest level. In any event, the question as to whether the People's evidence was so conclusive as to justify the trial court's refusal to charge the lesser offense of manslaughter in the second degree, is answered in the negative.

Nor was the error harmless. As enunciated in *People v Green* (*supra,* p 435), "[o]nly if defendant were convicted of the higher offense charged * * * and acquitted of the lower offense charged * * * would the failure to charge an even lesser offense * * * be harmless". In this case the higher offense charged was murder in the second degree, and the lesser or lower offense of which defendant stands convicted

was manslaughter in the first degree. It may not be said with certainty that had the jury been given an option to convict defendant of an even lesser offense, it would not have done so.

(2) *Criminally negligent homicide as a lesser included offense.*

In our opinion the trial court did not err in refusing to charge the jury as to criminally negligent homicide simply because there is no reasonable view of the evidence from which the jury could have concluded that defendant fired his weapon negligently. The People's version of the incident was that defendant fired his weapon four times while the victim was walking away. The defendant's version is that he fired while being beaten in order to scare his attackers away. Although some evidence was adduced that defendant had been drinking prior to the incident, such evidence is simply too sparse on which to base a conclusion that defendant at the time was intoxicated and therefore possibly negligent. Consequently, the second tier of the *Green* test is for defendant an insurmountable hurdle.

We have considered the other points raised by defendant and find them to be without merit. Since the defendant was convicted of the lesser included offense of manslaughter in the first degree, and not the crime of murder in the second degree as charged in the indictment, such charge must be dismissed with leave to resubmit the lesser charge to another Grand Jury if the People be so advised.*

DAMIANI, J. P., MANGANO and BOYERS, JJ., concur.

Judgment of the Supreme Court, Queens County, rendered March 10, 1977, modified, on the law, by reversing the conviction of manslaughter in the first degree, vacating the sentence imposed thereon and the count of the indictment charging murder in the second degree is dismissed without prejudice to the People to re-present any appropriate charges to another Grand Jury (see *People v*

---

* Speaking for myself alone, for the reasons expressed in my dissent in *People v Gonzales* (96 AD2d 847), I believe that the appropriate corrective action is reversal and remittal for a new trial. Although I do not retreat from the views there expressed, I deem myself bound by the majority's holding that dismissal of the indictment is required.

*Beslanovics,* 57 NY2d 726). As so modified, judgment affirmed.