THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
DANIEL GALLAGHER, Appellant.

Second Department, April 14, 1986

300

APPEARANCES OF COUNSEL

*Rappaport & Frost (Nathan R. Sobel* and *Freda S. Nisnewitz* of counsel), for appellant.

*Patrick Henry, District Attorney (Mark D. Cohen* of counsel), for respondent.

**OPINION OF THE COURT**

Per Curiam.

The principal question which divides the court on this appeal is whether a reversal is warranted on the ground that the defendant was convicted of both intentional murder (Penal Law § 125.25 [1]) and manslaughter in the second degree (Penal Law § 125.15 [1]) for the fatal shooting of one person. While a new trial is not required on this basis, in the interest of justice, the judgment appealed from should be modified by reversing the conviction of manslaughter in the second degree.

The defendant was charged by the Grand Jury of Suffolk County with two counts of murder in the second degree, arising out of the shooting death of Jack Sweeney, which climaxed a St. Patrick's Day celebration, marked by the defendant's imbibing of significant quantities of liquor over a 24-hour period.

The first count of the indictment accused the defendant of the intentional murder of Sweeney (Penal Law § 125.25 [1]) and the second count alleged that the defendant had caused Sweeney's death under circumstances evincing a depraved

indifference to human life, by recklessly engaging in conduct which created a grave risk of death (Penal Law § 125.25 [2]).

Viewing the evidence adduced at the trial in the light most favorable to the prosecution, as we must (see, People v Kennedy, 47 NY2d 196, 203; People v Tucker, 102 AD2d 535, 536), we are in unanimous agreement that any rational trier of fact would be justified in finding that the defendant was guilty, beyond a reasonable doubt, of either of the crimes of which he was convicted, intentional murder and reckless manslaughter (see, People v Contes, 60 NY2d 620, 621; People v Lopez, 111 AD2d 186). The facts with respect thereto are fully set forth in the opinion of our dissenting colleague.

Prior to the submission of this case to the jury, the trial court, during the presummation conference, announced its intention to submit both murder counts to the jury, and in addition, to submit manslaughter in the first degree (Penal Law § 125.20 [1]) as a lesser included offense under the intentional murder count, and manslaughter in the second degree (Penal Law § 125.15 [1]) as a lesser included offense under the depraved indifference murder count. Defense counsel objected to this proposed charge, contending, inter alia, that the defendant could not be convicted under both counts of murder, and that the two murder counts should be submitted only in the alternative. The objection was renewed following the court's charge to the jury.

The jury thereafter deliberated and returned a verdict convicting the defendant of intentional murder under count one, as charged, and reckless manslaughter under count two, as a lesser included offense of depraved indifference murder.

After the jury's discharge, defense counsel moved unsuccessfully to set aside the verdict on the ground of inconsistency. This motion was renewed prior to sentencing, and was again denied.

On appeal the defendant argues that the trial court was required by statute to submit to the jury the various counts in the alternative, and that its failure to do so requires vacatur of both convictions. Moreover, it is contended that the verdict was fatally inconsistent or repugnant, inasmuch as it is factually impossible for the defendant to have both "intentionally" and "recklessly" caused the death of Sweeney.

We disagree with the defendant's contention that the two counts charged in the indictment, intentional murder (Penal Law § 125.25 [1]) and depraved indifference murder (Penal

Law § 125.25 [2]) were inconsistent counts which should have been submitted to the jury in the alternative (CPL 300.30 [5]; 300.40 [5]).

The two counts were "non-inclusory concurrent counts". They were "concurrent counts" (CPL 300.30 [3]), because both offenses were alleged to have been committed through a single act (the shooting of the victim) and, therefore, any sentences which might have been imposed thereon would necessarily have to be concurrent (see, Penal Law § 70.25 [2]). However, the two counts were "non-inclusory", in that both counts charged crimes of the same degree, murder in the second degree, but each crime required proof of an element not essential to the other and hence, neither was a lesser included offense of the other (CPL 300.30 [4]; 1.20 [37]; cf. People v Register, 60 NY2d 270, cert denied 466 US 953). Since there was no mandatory requirement that the two counts of the indictment be submitted to the jury in the alternative, we find that the trial court did not abuse its discretion, as a matter of law, by submitting both counts to the jury with instructions that it return a separate verdict as to each (CPL 300.40 [3] [a]).

In addition, the trial court properly submitted a lesser included offense under each of the two indictment counts (CPL 300.50 [1]; 1.20 [37]) and the jury was correctly instructed to consider each lesser included offense in the alternative to its respective greater offense (CPL 300.50 [1], [4]).

While reckless manslaughter (Penal Law § 125.15 [1]) is a lesser included offense of intentional murder (People v Murray, 40 NY2d 327, 335, cert denied 430 US 948; People v Green, 56 NY2d 427, 433, rearg denied 57 NY2d 775), the two crimes are not mutually exclusive or self-contradictory, inasmuch as the lower mental state required to prove reckless manslaughter is included and subsumed within the higher mental state required to elevate the crime to intentional murder (People v Green, supra, at pp 432-433; People v Stanfield, 36 NY2d 467, 471). The defendant argues that one who acts intentionally, i.e., with the conscious objective of bringing about a particular result, cannot, simultaneously act recklessly, i.e., with conscious disregard of a substantial and unjustifiable risk that such result will occur (see, People v Green, supra, at p 439 [dissenting opn of Gabrielli, J.]; see also, 1 CJI [NY] 14.02 at 733-734). Nevertheless, the Court of Appeals has considered and rejected that argument, holding, as a matter of law, that where two crimes require the same act and result and differ only as to the required mental state, it is impossible to

commit the crime requiring the higher culpable mental state without concomitantly committing the lesser crime *(People v Green, supra; People v Perez,* 45 NY2d 204, 209-210; *People v Stanfield, supra).* Thus, we find nothing inherently self-contradictory in the jury's verdict in this case, by which the defendant was found guilty of both intentional murder and reckless manslaughter. Simply put, the finding of guilt as to one of the two counts does not exclude the same finding as to the other. Therefore, the defendant's repugnancy or inherent inconsistency claim must fail.

Finally, it is noted that after the trial court indicated that it would submit both the intentional murder and the depraved indifference murder counts to the jury, defense counsel could, but did not specifically request that reckless manslaughter be submitted to the jury as a lesser included offense of the intentional murder count. Therefore, the court's failure to so instruct the jury does not constitute error (CPL 300.50 [1], [2]; *People v Green, supra,* at p 430). But, "a defendant should not be convicted and punished more than once for conduct which, although constituting only one prohibited act, may, because of statutory definition, be theorized as constituting separate criminal acts" *(People v Perez,* 45 NY2d 204, 209, *supra).* Thus, under the facts of this case, the conviction of the lesser included count of manslaughter in the second degree should be reversed and the sentence imposed thereon vacated *(see, People v Lee,* 39 NY2d 388, 390; *People v Grier,* 37 NY2d 847; *People v Oglesby,* 84 AD2d 541; *People v Reid,* 58 AD2d 611).

■ We agree with our dissenting colleague with respect to the other issues raised by the defendant.

BRACKEN, J. P. (concurring in part and dissenting in part). As the result of a series of events arising out of a St. Patrick's Day celebration, culminating in the tragic shooting death of Jack Sweeney, the defendant Daniel Gallagher was convicted, upon a jury verdict, of the crimes of murder in the second degree and manslaughter in the second degree. Although the members of this court are in agreement that the trial evidence was sufficient to sustain a conviction under either count, we are divided on the question of whether the jury's verdict, finding the defendant guilty of both intentional murder and reckless manslaughter for causing the death of the same person, was repugnant or otherwise defective. Because I conclude that the verdict cannot stand, I respectfully dissent in part and cast my vote for reversal and a new trial on the intentional murder count.

As described by the majority, the indictment charged the defendant with two counts of murder in the second degree. The first count accused the defendant of the intentional murder of Jack Sweeney (Penal Law § 125.25 [1]), and the second count alleged that the defendant had caused Sweeney's death under circumstances evincing a depraved indifference to human life, by recklessly engaging in conduct which created a grave risk of death (Penal Law § 125.25 [2]).

Viewing the evidence adduced at the trial of this indictment in the light most favorable to the prosecution, as we must on appellate review *(People v Kennedy,* 47 NY2d 196, 203; *People v Tucker,* 102 AD2d 535, 536), we all agree that any rational trier of fact would be justified in finding, beyond a reasonable doubt, that the defendant was guilty of either of the crimes of which he was convicted *(see, People v Foster,* 64 NY2d 1144, 1146, *cert denied* — US —, 106 S Ct 166; *People v Contes,* 60 NY2d 620, 621; *People v Lopez,* 111 AD2d 186).

The evidence, insofar as it is pertinent to this appeal, established that the shooting death of Jack Sweeney, which occurred shortly before noon on March 18, 1981, climaxed a St. Patrick's Day celebration which the defendant had begun approximately 24 hours earlier. The defendant, a New York City police officer, had been assigned to duty at the city's St. Patrick's Day parade on March 17. During the course of his tour of duty, the defendant consumed significant quantities of alcoholic beverages. At the conclusion of the parade, the defendant continued to drink both en route from the parade to his precinct in Queens, and, thereafter, at a series of bars and other locales. Sometime during the early morning hours of March 18, the defendant arrived at a tavern in Brentwood, Suffolk County, where he continued to drink in the company of a group that included, among others, fellow New York City Police Officer David McAteer and the deceased, Sergeant Jack Sweeney of the New York City Police Department; although McAteer was acquainted with both the defendant and Sweeney, the latter two had not previously met each other.

At approximately 4:00 A.M., the party moved to the McAteer home, where the consumption of alcohol continued. At about 8:00 A.M., after the three men had driven McAteer's son to school, they arrived at Sweeney's house, where they imbibed beer and wine, and the defendant claims to have smoked a small quantity of marihuana as well.

At approximately 10:45 A.M., after awaking from a short

nap, McAteer noted that the defendant and Sweeney were still drinking wine, and both men appeared to be extremely intoxicated. McAteer prevailed upon them to return to his home for the purpose of picking up their own cars and going to their respective homes. Without assistance, the defendant walked out of Sweeney's house to McAteer's car and seated himself inside. McAteer then drove to his house, arriving shortly after 11:00 A.M. Deciding that both men were incapable of driving, McAteer set out to drive them home. Not knowing the exact location of the defendant's house, McAteer asked the defendant to point it out, but the defendant simply advised McAteer, in slurred speech, not to worry about it. McAteer heard nothing further until, while driving on Commack Road in Brentwood, he suddenly heard "explosions" by his right ear. He immediately ducked his head, turned and saw the defendant holding his gun in his right hand. The gun was pointed over the defendant's left shoulder at Sweeney, who was in the back seat. McAteer stopped the car and grabbed the gun from the defendant. He then got out of the car and ran around to Sweeney, who had been shot twice, in the neck and in the chest (a third shot had missed Sweeney, lodging in the rear seat). The defendant exited the car and stood nearby, silently, until his wife appeared and brought him into a nearby house.

The defendant testified that after having smoked marihuana at Sweeney's house, he had either fallen asleep or passed out, and his next recollection was of finding himself in McAteer's car, seated next to McAteer, who was driving. He heard a voice, which he did not recognize, asking, "Can we trust this guy? Is he going to be any problem for us?" Then, he felt a series of slaps on the back of his head. His next recollection was of seeing his wife standing next to the car, and calling to her for help, because some people were going to kill him. The defendant had no further recollection of the events of that day.

Members of the Suffolk County Police Department testified that upon their arrival at the scene, they were directed to a nearby house, where, sprawled on a sofa, they found the defendant, crying. The officers who first saw the defendant concluded that he was intoxicated, because his eyes were glassy, his speech slurred, and he smelled of alcohol. Nevertheless, the defendant appeared to be aware and to understand what was going on around him, and he was able to

converse with the officers and to appropriately respond to their questions.

Moreover, when the defendant was advised of his *Miranda* rights, he responded that he knew his rights because he had been a police officer for 10 years. He thereafter made certain statements in which he admitted shooting Sweeney because he believed that the men he had been with were going to kill him. The defendant's statements also reflected that he was aware of the gravity of his act, and the consequences thereof.

In addition to the foregoing evidence pertaining to the events surrounding the death of Sergeant Sweeney, the jury was presented with considerable medical and other scientific evidence bearing upon the shooting and the defendant's state of mind at the time. For example, on the basis of the autopsy, ballistics tests and firearm discharge residue tests, it was determined that the two bullets recovered from the deceased's body had been fired from defendant's gun, from a distance of not more than 18 inches. In addition, a blood test performed at approximately 3:50 P.M., some five hours after the defendant had consumed his last drink, revealed that he had .19 of 1% by weight of alcohol in his blood. From this it was determined that defendant's blood alcohol level would have been approximately .29 of 1% by weight five hours earlier, and the blood alcohol level at which intoxication occurs, from a medical standpoint, is .20 of 1%.

Of perhaps greater significance was the psychiatric testimony adduced at trial. The defendant's experts testified to the effect that the defendant had been incapable of rational judgment and unable to formulate the intent to kill Sergeant Sweeney because of his advanced state of intoxication, coupled with his use of marihuana and lack of sleep, which caused him to suffer blackouts and hallucinations. This testimony was countered by the prosecution's psychiatric experts, who opined that the defendant had not used a sufficient amount of marihuana to induce hallucinations and, further, that the defendant had not been in a blackout state and subject to hallucinations by reason of his alcohol intake. The prosecution experts found that the defendant's act was volitional and carried out with intent to cause the death of Sergeant Sweeney.

Notwithstanding the uncontroverted evidence of the defendant's virtually continuous consumption of alcohol over a period of approximately 24 hours, and his resultant intoxication, coupled with the effects of sleep deprivation and, per-

haps, marihuana, there was sufficient evidence from which the jury could rationally conclude, beyond a reasonable doubt, that the shooting death of Sergeant Sweeney was intentional, i.e., that the defendant's conscious objective was to cause that death (Penal Law § 15.05 [1]; § 125.25 [1]). It is, of course, fundamental that intoxication is not a defense to a criminal charge (Penal Law § 15.25). Although a jury may properly consider the available evidence of a defendant's intoxication in determining whether he was capable of entertaining the intent required as an element of a particular crime (Penal Law § 15.25; *see also, People v Perry,* 61 NY2d 849, 850; *People v Orr,* 43 AD2d 836, *affd* 35 NY2d 829; 1 CJI [NY] 9.46 at 521), we have recognized that "even an inebriated individual may be capable of forming an intent" *(People v Cintron,* 74 AD2d 457, 461-462, citing *People v Leonardi,* 143 NY 360, 365-366). The evidence pertaining to the defendant's intent and his state of intoxication, including the testimony of the various experts, presented the jury with a factual question, and the jury's resolution of that question against the defendant was adequately supported by the record *(see, People v Gruttola,* 43 NY2d 116, 122; *see also, People v Handly,* 102 AD2d 922; *People v Bachert,* 102 AD2d 904). In particular, the weight accorded to the opinions of the several expert witnesses was a matter within the province of the jury *(see, e.g., People v Lancaster,* 65 AD2d 761; *People v Bell,* 64 AD2d 785; *People v Buthy,* 38 AD2d 10, 12; 1 CJI [NY] 7.13 at 280; Fisch, New York Evidence § 432 [2d ed]), and this court perceives no basis for overturning the jury's assessment of the conflicting expert opinions offered in this case.

Having concluded, as have my colleagues of the majority, that there was no insufficiency of proof, I am nevertheless constrained to conclude that there must be a reversal because the verdict convicting the defendant of both intentional and reckless homicide cannot stand. Here the defendant was charged with two counts of murder in the second degree: the first count accused the defendant of intentionally causing the death of Sergeant Sweeney (Penal Law § 125.25 [1]), and the second count alleged that the defendant had caused Sweeney's death by reckless conduct evincing a depraved indifference to human life (Penal Law § 125.25 [2]).

Prior to submission of this case to the jury, Criminal Term advised respective counsel of its intention to submit both counts and, in addition, to submit the crimes of manslaughter in the first degree (Penal Law § 125.20 [1]) as a lesser included

offense under the intentional murder count, and manslaughter in the second degree (Penal Law § 125.15 [1]) as a lesser included offense under the depraved indifference murder count. The court further indicated, over timely objection by defense counsel, that the two counts of the indictment would *not* be submitted to the jury in the alternative. Thus, the court instructed the jury to consider each count, and its respective lesser included offense, and to render a separate verdict as to each count. This instruction drew another objection from defense counsel, who reiterated his view that the defendant could not be convicted under both counts. The jury thereafter deliberated and returned a verdict convicting the defendant of intentional murder under count one, as charged, and reckless manslaughter under count two, as a lesser included offense of depraved indifference murder. Immediately following the jury's discharge, defense counsel moved, unsuccessfully, to set aside the verdict on the ground of inconsistency. This motion was renewed prior to sentencing, and was again denied.

On appeal, it is argued that the foregoing verdict was fatally inconsistent or repugnant inasmuch as it is factually impossible for the defendant to have both intentionally and recklessly caused the death of Sergeant Sweeney. Moreover, it is the defendant's contention that the trial court was required by statute to submit the various counts to the jury in the alternative, and that its failure to do so requires vacatur of both convictions.

Addressing the defendant's first argument, the term "repugnancy", as defined by decisional authority, refers to a verdict on a multiple-count indictment containing findings of guilt and nonguilt whose inconsistency, i.e., lack of rational compatibility, is of such dimension as to warrant reversal *(People v Dercole,* 72 AD2d 318, 326, *appeal dismissed* 52 NY2d 956). "[A]bsent a rational theory for their existence, apparently inconsistent verdicts will be held repugnant when the crimes upon which the verdicts are returned are either identical as to each of their elements or so related that an acquittal on one negatives an essential element of the crimes upon which there was conviction" *(People v Dercole, supra,* at p 333). Stated otherwise, a repugnant verdict is one which convicts a defendant of a crime although the jury has actually found that the defendant did not commit one or more essential elements thereof *(People v Tucker,* 55 NY2d 1, 6). In determining

whether verdicts of guilt and nonguilt as to particular counts are repugnant, our review is limited to the elements of each crime as charged by the trial court to the jury, without regard to the correctness of those instructions *(People v Tucker, supra,* at pp 4, 7; *see also, People v Hampton,* 61 NY2d 963, 964).

Applying these established principles to the present case it is apparent that the verdict does not fall within the classic definition of repugnancy. The defendant was convicted of intentional murder, acquitted of depraved indifference murder, and convicted of reckless manslaughter. Reviewing the elements of each crime as charged to the jury, I perceive no basis for concluding that the acquittal of depraved indifference murder negatived an essential element of either of the crimes upon which the defendant was convicted. In fact, the defendant does not contend that the acquittal was repugnant to either of the two convictions. Rather, it is the defendant's contention that the repugnancy in this case involves the double convictions of intentional murder and reckless manslaughter arising out of the same homicide.

Although it is true that most repugnancy claims have emanated from cases involving convictions and acquittals on separate counts of multiple-count indictments *(see, e.g., People v Goodfriend,* 64 NY2d 695; *People v Satloff,* 82 AD2d 896, *affd* 56 NY2d 745; *People v Tucker, supra; People v Carbonell,* 40 NY2d 948; *People v Kenny,* 100 AD2d 554; *People v Campbell,* 100 AD2d 517; *People v Schaffer,* 80 AD2d 865; *People v Wimms,* 80 AD2d 837; *People v Lucas,* 80 AD2d 836), a verdict finding a defendant guilty of each of two counts may also be repugnant where that verdict is inherently self-contradictory, and a finding of guilt as to one count logically excludes a finding of guilt as to the other *(People v McDavis,* 97 AD2d 302, 304). For example, verdicts convicting a defendant of both theft and receipt of stolen property, with respect to the same property, have been held to be inconsistent or repugnant *(see, People v Dercole,* 72 AD2d 318, 326-327, *appeal dismissed* 52 NY2d 956, *supra),* both in this State *(see, e.g., People v Daghita,* 301 NY 223)[1] and as a matter of Federal statutory law

---

1. Of course, under present New York law, it is no defense to a prosecution for criminal possession of stolen property that defendant stole or participated in the larceny of the property; the statutory provision proscribing conviction for both larceny and criminal possession of stolen property with respect to the same property has been eliminated (Penal Law § 165.60 [2], as amended by L 1976, ch 375).

*(Milanovich v United States,* 365 US 551; *see also, United States v Gaddis,* 424 US 544).²

The defendant argues that the verdict in this case, convicting him of both intentional murder and reckless manslaughter, was similarly repugnant, inasmuch as he could not have caused the death of Sergeant Sweeney with two different culpable mental states, i.e., intentionally and recklessly. The trial court's charge *(see, People v Tucker, supra)* defined each of these crimes for the jury according to their statutory elements. The jury was charged that in order to convict the defendant of murder in the second degree it had to find that he had caused the death of Sergeant Sweeney and that he had done so intentionally, i.e., with the conscious objective of causing Sweeney's death *(see,* Penal Law § 125.25 [1]; § 15.05 [1]). The jury was further charged that in order to convict the defendant of manslaughter in the second degree, it was required to find that he had caused Sweeney's death, and that he had done so recklessly, i.e., with awareness and conscious disregard of a substantial and unjustifiable risk of death, such disregard constituting a gross deviation from the standard of conduct that a reasonable person would observe in the situation *(see,* Penal Law § 125.15 [1]; § 15.05 [3]). Thus, it is clear that the two crimes proven to the jury's satisfaction were identical with respect to the required act and result (causing the death of another person), and differed only insofar as each required a separate and distinct culpable mental state (Penal Law § 15.00 [6]). It was, in my view, inherently self-contradictory for the jury to have determined, by its verdict, that the defendant had acted with the specific intent to kill and, simultaneously, with recklessness.

The Penal Law (art 15) "has established a hierarchy of culpable mental states" *(People v Morton,* 100 AD2d 637). Under this hierarchy, "criminal negligence" (Penal Law § 15.05 [4]) is the lowest or least culpable mental state, followed, in order of increasing culpability, by "recklessly" (Penal Law § 15.05 [3]), "knowingly" (Penal Law § 15.05 [2])³ and,

---

**2.** Apart from these cases involving convictions for both larceny and possession of stolen property, the United States Supreme Court has not otherwise addressed the situation presented herein, i.e., a defendant, convicted of two crimes, who asserts that guilt as to one logically excludes a finding of guilt as to the other *(United States v Powell,* 469 US 57, —, n 8, 105 S Ct 471, 479, n 8).

**3.** "Knowingly" is not a required culpable mental state in any of the crimes considered on this appeal.

finally, "intentionally" (Penal Law § 15.05 [1]), the highest form of mental culpability *(People v Morton, supra).* These various culpable mental states involve " 'fine gradations along but a single spectrum of culpability' " *(People v Green,* 56 NY2d 427, 432, citing *People v Stanfield,* 36 NY2d 467, 473), and each lower mental state is necessarily included and subsumed within those mental states of greater culpability *(People v Green, supra,* at pp 432-433). Thus, for example, depraved indifference murder (Penal Law § 125.25 [2]) differs from intentional murder (Penal Law § 125.25 [1]) because the former requires a *mens rea* of recklessness, a lesser state of mental culpability, coupled with the existence of an objective factual setting, independent of the defendant's state of mind, which rises to the level of "circumstances evincing a depraved indifference to human life" *(People v Gomez,* 65 NY2d 9, 11; *People v Register,* 60 NY2d 270, 274, *cert denied* 466 US 953). Similarly, reckless manslaughter (Penal Law § 125.15 [1]), which is distinguishable from intentional murder only insofar as it requires a lower form of mental culpability, is a lesser included offense of intentional murder (CPL 1.20 [37]; *People v Murray,* 40 NY2d 327, 335, *cert denied* 430 US 948; *see also, People v Green, supra,* at p 433), as it is impossible to commit intentional murder without concomitantly committing reckless manslaughter. Also, it is impossible to commit depraved indifference murder without concomitantly committing reckless manslaughter, and the latter is, therefore, a lesser included offense of the former *(People v Ivisic,* 95 AD2d 307). Both crimes require recklessness as their culpable mental state, and the criminal conduct is elevated from manslaughter to murder only by reason of the existence of "circumstances evincing a depraved indifference to human life" (Penal Law § 125.25 [2]).

Notwithstanding that the lower mental state of "recklessness" is included and subsumed within the more culpable state of "intentionally" *(People v Green, supra,* at pp 432-433), intentional murder and reckless manslaughter are not equivalent, so as to allow the defendant to be convicted of both crimes based upon a single criminal act. Indeed, had reckless manslaughter been submitted to the jury as a lesser included offense of the intentional murder count in this case, the trial court would have been required, by statute, to submit such crimes in the alternative and to instruct the jury that it could render a verdict of guilty to either, depending upon its findings of fact, but not both (CPL 300.50 [4]). Thus, notwithstand-

ing that every intentional murder constitutes a concomitant reckless manslaughter, they are distinct and separate crimes, and a jury must choose, by appropriate findings of fact, which, if either, of these two crimes was committed by the defendant on trial. The distinction between the culpable mental states of "intentionally" and "recklessly" is further illustrated by the fact that a person may be found guilty of an attempt to commit an intentional crime, but not an attempt to commit a reckless crime. This is so because a conviction for attempt requires an intent to commit a specific crime (Penal Law § 110.00). Therefore, an intent to commit a crime such as reckless manslaughter, which does not require intent, is "logically repugnant" *(see, e.g., People v Brown,* 21 AD2d 738, 739; *see also, People v Acevedo,* 32 NY2d 807; *cf. People v Foster,* 19 NY2d 150).

In view of the foregoing distinctions, it is my opinion that the verdict in this case is repugnant. Simply put, I am unable to discern any rational theory to support the jury's determination, by its verdict, that the shooting death of Jack Sweeney was both intentional and, at the same time, reckless. It may be that a person can simultaneously harbor, as part of the same criminal conduct, two specific intents *(see, People v McDavis,* 97 AD2d 302, *supra).* However, the finding by the jury in this case that the defendant shot Sweeney with the conscious objective of causing his death (i.e., intentionally) logically excluded a finding that defendant had merely been aware of a substantial and unjustifiable risk of death and had consciously disregarded that risk in a manner constituting a gross deviation from the standard of reasonable conduct (i.e., recklessly). Alternatively, a finding by the jury of the latter circumstance was logically repugnant to a finding of the former.

This conclusion is supported by New York's Committee on Criminal Jury Instructions, which states (1 CJI [NY] 14.02 at 733-734): "Concerning such crimes having the requisite common elements but different mental states, trial courts are, however, required to exercise special caution in charging such 'greater' and 'lesser' crimes *'in the alternative'* as required by statute. (See CPL § 300.40 (3b); § 300.50 (1)). Obviously a defendant may not be convicted of acting both 'intentionally' (PL § 15.05 (1)) and 'recklessly' (PL § 15.05 (3)) by the same conduct committed at the same time. A finding by a jury that a defendant acted 'recklessly' is a finding that he did not act 'intentionally', and vice versa. Such verdicts would necessarily

be repugnant under *People v. Tucker*, 55 N.Y.2d 1, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981)" *(see also, People v Magliato*, 110 AD2d 266, *lv granted* 67 NY2d 653).

It follows from this rationale that the two counts originally contained in the indictment were "inconsistent counts" within the meaning of CPL 300.30 (5), which provides: "Two counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." This is so because a finding that the defendant committed intentional murder, i.e., that his conscious objective was to cause Sergeant Sweeney's death, would logically exclude and be inherently self-contradictory to a finding that the defendant committed depraved indifference murder, the *mens rea* of which is recklessness, and which includes the additional objective requirement that the conduct occurred "[u]nder circumstances evincing a depraved indifference to human life" *(see, People v Gomez*, 65 NY2d 9, 11, *supra; People v Register*, 60 NY2d 270, *supra)*. Thus, the intentional murder count and the depraved indifference murder count contained in the indictment should have been submitted to the jury in the alternative, pursuant to CPL 300.40 (5), which provides: "If an indictment contains two inconsistent counts, the court must submit at least one thereof. If a verdict of guilty upon either would be supported by legally sufficient trial evidence, the court may submit both counts in the alternative and authorize the jury to convict upon one or the other depending upon its findings of fact. In such case, the court must direct the jury that if it renders a verdict of guilty upon one such count it must render a verdict of not guilty upon the other. If the court is satisfied that a conviction upon one such count, though supported by legally sufficient trial evidence, would be against the weight of the evidence while a conviction upon the other would not, it may in its discretion submit the latter count only." The lesser included offenses submitted under each count should then have been considered by the jury in the alternative to their respective greater offenses *(see,* CPL 300.50).

One comment with respect to the verdicts in this case is in order. The People contend that the defendant's repugnancy claim was not preserved, as a matter of law, for appellate review because the defendant failed to raise this claim prior to discharge of the jury *(see, e.g., People v Alfaro*, 66 NY2d 985; *People v Satloff*, 56 NY2d 745, *supra; People v Burford*, 105 AD2d 752). While it is true that the defense did not raise an

objection on the ground of repugnancy after the verdict had been announced and before the jury had been formally discharged, the record makes it abundantly clear that the defendant's trial counsel specifically objected to the manner of submission of this case to the jury, both at the precharge conference and, thereafter, at the conclusion of the charge. This constituted, in my view, a sufficient protest to preserve a question of law for appellate review, because the objections were made at a time when the trial court still had the opportunity to change its ruling (CPL 470.05 [2]).

One further argument raised by the defendant, although not a basis for reversal in this case, requires some comment. The defendant asserts that Criminal Term erred when it granted a request by the jury, during its deliberations, to have an armless chair sent into the jury room without first notifying counsel. The defendant surmises, without proof, that the chair was utilized by the jury to conduct certain experiments involving reenactment of the shooting, thereby putting the jury "in possession of evidence not introduced at trial" *(People v Brown,* 48 NY2d 388, 393).

All members of this court agree that it was error for the trial court to have responded to the jury's request without first communicating that request to the respective attorneys. A court may not communicate with the jury in the absence of the defendant and his counsel *(see, e.g., People v Ciaccio,* 47 NY2d 431, 437; *People v Saccomanno,* 25 AD2d 528, 529). As the court may not allow the jury to take exhibits into the jury room without first hearing the parties *(see,* CPL 310.20), it follows that the parties should also be informed of a request for an item which is not in evidence, at least where that item is not something which is purely a matter of "housekeeping" *(see, e.g., United States v Ronder,* 639 F2d 931, 934). Here, however, the defendant's claim that the jury used the chair in order to reenact the crime is sheer speculation, and I would not be inclined to reverse in the absence of competent proof tending to establish prejudice.

Based on the foregoing analysis, I would reverse and remit for a new trial.

RUBIN, LAWRENCE and KUNZEMAN, JJ., concur; BRACKEN, J. P., concurs in part and dissents in part and votes to reverse the judgment, on the law, order a new trial on the count of murder in the second degree (Penal Law § 125.25 [1]), and to otherwise dismiss the indictment without prejudice to the

People to re-present any appropriate charges to another Grand Jury, with an opinion.

Judgment of the Supreme Court, Suffolk County, rendered February 2, 1982, modified, as a matter of discretion in the interest of justice, by reversing the conviction of manslaughter in the second degree and vacating the sentence imposed thereon. As so modified, judgment affirmed.

Justice Kunzeman had been substituted for former Justice, now Judge Titone (see, Judiciary Law § 21; *Wittleder v Citizens' Elec. Illuminating Co.,* 47 App Div 543).