Jasen, J.
At issue on this appeal is whether the crime of criminally negligent homicide is a lesser included offense of the crime of manslaughter in the second degree.
The defendant was indicted for manslaughter, second degree, for the death by shooting of Thomasina Banks, a woman with whom he maintained a common-law relationship. There were no other witnesses to the shooting and the People’s case was proved almost entirely by the defendant’s own oral and written statements, judicially determined to be voluntary or otherwise unobjected to. The essential facts, as reconstructed from the defendant’s statements, are these. The defendant and Thomasina, parents of three girls, at the time maintained separate residences. On January 28, 1969, at about 10:00 p.m., he decided to visit Thomasina. Before reaching her apartment, he telephoned a friend, Willie Nyland, the boyfriend of Thomasina’s sister, and during a lull in the conversation thought he heard Thomasina’s voice in the background. He proceeded to her apartment, arriving at about 10:30 or 10:45 p.m., but was told by the children that she was not home. He then walked to a nearby subway station and a short time later met Thomasina there. The two then returned to Thomasina’s apartment, each apparently in good spirits.
Thomasina then changed clothes and the two drank some wine. At least two of the children were in the apartment at the time. Together they discussed purchasing a car and Thomasina tried without success to mend her daughter’s dress. Thomasina and the defendant were alone in the bedroom, sitting on the bed with the door closed. The defendant asked whether she had been at Willie’s house a short time before. She answered no, explaining that she had been at a friend’s. The defendant then said that he had a gun and that he was going to shoot her. He then went to the dresser and took from the drawer a .38 caliber two-shot derringer. The pistol had been purchased about a year and one half before, test fired once at that time and usually was kept at Thomasina’s apartment in a loaded condition. The defendant then cocked the hammer and standing very close to Thomasina with the barrel pointed upward at about a 45 degree angle, but in her direction, repeated "I’m going to shoot you.” Thomasina responded, "Bob, don’t mess with the gun like that”, and then slapped his hand or arm. The weapon discharged, inflicting a mortal wound through the left breast.
The defendant related an unsuccessful attempt to revive *470 her, unsuccessful efforts to telephone for police assistance and a frantic telephone call to his mother in North Carolina, who advised him to contact the police. He then summoned a policeman on foot patrol in front of 216 W. 62nd Street. The statements thereafter made relate that he did not intend to shoot, but only to scare Thomasina; that he cocked the hammer because, being familiar with the weapon, she would not otherwise have been frightened.
Ballistics evidence showed that the weapon discharged about lVi inches from the victim. Expert testimony established that in the fully cocked position, 14 pounds of pressure on the trigger would cause the weapon to discharge, but that even in the uncocked position a sharp enough blow on the hammer could cause it to fire. There was additional testimony that the weapon lacked a trigger guard and that this made it unsafe. A toxological report showed brain alcohol content of 0.075%, indicating that the victim had been drinking.
Upon this evidence and without the benefit of a requested charge on criminally negligent homicide, the defendant was convicted of the crime of manslaughter in the second degree. On appeal, the Appellate Division reversed the conviction on the law and ordered a new trial "in which the lesser included crime will be submitted to the jury.”
Subdivision 1 of section 125.15 of the Penal Law, in pertinent part, provides that a person is guilty of manslaughter, second degree, when he recklessly causes the death of another person. A person is guilty of criminally negligent homicide (Penal Law, § 125.10), when, with criminal negligence, he causes the death of another person. The Criminal Procedure Law (CPL 1.20, subd 37) provides that "[w]hen it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is, with respect to the former, a 'lesser included offense.’ ”
The essential distinction between the crimes of manslaughter, second degree, and criminally negligent homicide is the mental state of the defendant at the time the crime was committed. (People v Haney, 30 NY2d 328, 333.) In one, the actor perceives the risk, but consciously disregards it. (Penal Law, § 15.05, subd 3.) In the other, he negligently fails to perceive the risk. (Penal. Law, § 15.05, subd 4.) The result and the underlying conduct, exclusive of the mental element, are the same.
*471 The People contend that the mental elements of the respective crimes are mutually exclusive and that, paraphrasing the definition of a lesser included offense, it is possible to commit the greater without concomitantly committing the lesser offense, and that, hence, the latter is not included in the former.
The argument, conceptually nice and mechanically accurate, is not persuasive. To begin with, the underlying conduct in each, exclusive of the culpable mental state, is the same. And at the outset the People are met with the equally hypertechnical counterargument that the Penal Law provision (§ 15.00, subd 4) which includes within the definition of conduct "an act or omission and its accompanying mental state” (emphasis supplied), is not fully applicable, at least for purposes of what is a lesser included offense under the Criminal Procedure Law definition (CPL 1.20).
But more fundamentally, criminal recklessness and criminal negligence with respect to a particular result—here homicide—may in a particular case, if not hypothetically or definitionally, be but shades apart on the scale of criminal culpability. And the distinction between the two mental states is less clear practically than theoretically. Indeed, the definitional cleavage the People would draw, while theoretically appealing, may be illusory in practical application. Hence it seems manifest that in a practical, if not a literal definitional sense, if one acts with criminal recklessness he is at least criminally negligent. Moreover, negligence may, in a particular case, quickly, even imperceptibly, aggravate on the scale of culpability to recklessness. The principle seems well illustrated here, or at least the jury, if properly instructed, would have been privileged so to conclude.
It is necessary to say whether in this record there was a reasonable view of the evidence that would have supported a finding that the defendant committed the lesser but not the greater offense, thus entitling him to the instruction as requested. (CPL 300.50.) We think there was. Whether the defendant perceived the risk of harm and consciously disregarded it (manslaughter, second degree) or negligently failed to perceive the risk (criminally negligent homicide) was, we think, on this record for the jury, properly instructed, to say. When the defendant placed the derringer at Thomasina’s breast, he was at least negligent with regard to the risk posed, or so the jury would have been privileged to conclude. Whether when the derringer was cocked and while "playing *472 with the gun”, unawareness escalated or should have escalated to awareness of the ultimate risk created—criminal recklessness—was a factual question for the jury, considering all the circumstances including, by way of example, defendant’s familiarity with weapons and the safety and other characteristics of this weapon, the interval since he last handled this particular weapon, and the likelihood that it was still loaded. While it is his perception or nonperception of the risk of harm that governs and not the manner of occurrence of the ultimate harm inflicted, risk creation and risk perception are colored also by how others viewed the situation. Here, notably, the jury could conclude from the evidence that Thomasina viewed the defendant’s actions as only "messing” with the derringer, which perception, with other permissible inferences, might support a jury finding of guilty of criminally negligent and not reckless homicide.
Therefore, on the particular facts of this case on which we focus rather than merely superimposing the "impossibility” formula of lesser included offense upon the abstract statutory language (see People v Hayes, 35 NY2d 907; People v Cionek, 35 NY2d 924), we conclude that criminally negligent homicide is a lesser included offense of manslaughter, second degree, and that the defendant was entitled to the requested instruction. (Compare Pitler, New York Criminal Practice Under the CPL, § 12.49, pp 661-662, 665.)
Because under the statutory definition (CPL 1.20, subd 37), criminally negligent homicide is a lesser included offense of manslaughter, second degree, it is unnecessary to look to those provisions of the Criminal Procedure Law (220.20) which for plea purposes attempt specially to define lesser included offenses. Notably, there it is provided that, in addition to the special meaning of "lesser included offense”, a plea to an offense of lesser grade than one charged in an indictment also means a "lesser included offense” as defined in CPL 1.20 (subd 37). (CPL 220.20 subds 1, 2.)
Our conclusion is buttressed by policy considerations. It seems manifest that there is a benefit to the People—indeed here the Assistant District Attorney at trial argued that criminally negligent homicide is a lesser included offense of manslaughter, second degree—as well as to the defendant in recognizing that the one offense is included in the other. (See Pitler, New York Criminal Practice Under the CPL, § 12.49, p 660.) That is especially so where in a particular case, as is *473 illustrated here, the dividing line between the offenses may be factually blurred.
Again, because in individual cases courts and juries may be faced with such fine gradations along but a single spectrum of culpability for unintended criminal homicides, the rationale of the majority in People v Moyer (27 NY2d 252), if applicable at all, is not to the contrary. By way of contrast, there, for example, the two crimes—assault third degree, and harassment—each involved different protected interests relating to distinguishable harms sought to be avoided, arguably lending support to the majority’s conclusion that proof of an additional element was required and that, hence, harassment was not included within assault, third degree. There simply was not the interrelationship here present of protected interest with such fine gradation of culpability. Insofar as the Moyer court relied by way of dictum on the Criminal Procedure Law sections defining lesser included offenses for plea purposes, what has already been said with regard to the applicability of the general definition section (CPL 1.20, subd 37) is sufficient answer.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.