Gabrielli, J.
(dissenting). I dissent and conclude that there is no justification in the record for the majority’s holding that "defendant’s conduct or claimed lack of perception, together with the belief of the victim and defendant’s followers, if accepted by the jury, would justify a verdict of criminally negligent homicide”. The Appellate Division was correct in holding that "Defendant’s belief in his superhuman powers, whether real or simulated, did not result in his failure to perceive the risk but, rather, led him consciously to disregard the risk of which he was aware”.
At trial, it was shown, primarily from defendant’s own statements to the police and testimony before the Grand Jury, that during the course of a "religious ordeal”, defendant, the self-proclaimed leader of the Sudan Muslim sect of Rochester, New York, stabbed one of his followers, Kenneth Goings, a number of times in the heart and chest causing his death.
Additionally, the evidence established defendant’s awareness and conscious disregard of the risk his ceremony created and is entirely inconsistent with a negligent failure to perceive that risk. Testimony was adduced that just prior to being stabbed, Goings, a voluntary participant up to that point, objected to continuance of the ceremony saying "No, father” and that defendant, obviously evincing an awareness of the possible result of his actions, answered, "It will be all right, son”. Defendant testified that after the ceremony, he noticed blood seeping from the victim’s wounds and that he attempted to stop the flow by bandaging the mortally wounded Goings. Defendant further stated that when he later learned that Goings had been removed to another location and *573 had been given something to ease the pain, he became "uptight”, indicating, of course, that defendant appreciated the risks involved and the possible consequences of his acts.
Examination of the two homicide sections of the Penal Law, here involved, is important.
"A person is guilty of manslaughter in the second degree when: 1. He recklessly causes the death of another person” (Penal Law, § 125.15, subd 1); and subdivision 3 of section 15.05 provides that a person acts "recklessly” with respect to a result when he is aware of and disregards a substantial and unjustifiable risk that such result will occur.
"A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person” (Penal Law, § 125.10); and a person acts with "criminal negligence” with respect to a result when he fails to perceive a substantial and unjustifiable risk that such result will occur (Penal Law, § 15.05, subd 4).
Simply stated, a reckless offender (manslaughter) is aware of the risk and consciously disregards it; whereas, on the other hand, the "criminally negligent” offender is not aware of the risk created and cannot thus be guilty of disregarding it.
Can it be reasonably claimed or argued that, when the defendant inflicted the several stab wounds, one of which penetrated the victim’s heart and was four and three-quarter inches deep, the defendant failed to perceive the risk? The only and obvious answer is simply "no”.
Moreover, the record is devoid of evidence pointing toward a negligent lack of perception on defendant’s part. The majority concludes otherwise by apparently crediting the testimony of defendant, and one of his followers, that at the time defendant was plunging knives into the victim, the defendant thought "there was no danger to it”. However, it is readily apparent that the quoted statement does not mean, as the majority assert, that defendant saw no risk of harm in the ceremony, but, rather, that he thought his powers so extraordinary that resultant injury was impossible. Thus, the testimony does not establish defendant’s negligent perception for even a grossly negligent individual would perceive the patent risk of injury that would result from plunging a knife into a human being; instead, the testimony demonstrates defendant’s conscious disregard of the possible consequences that would naturally flow from his acts.
*574 This case might profitably be analogized to one where an individual believing himself to be possessed of extraordinary skill as an archer attempts to duplicate William Tell’s feat and split an apple on the head of another individual from some distance. However, assume that rather than hitting the apple, the archer kills the victim. Certainly, his obtuse subjective belief in his extraordinary skill would not render his actions criminally negligent. Both, in the context of ordinary understanding and the Penal Law definition (§ 15.05, subd 3), the archer was unquestionably reckless and would, therefore, be guilty of manslaughter in the second degree. The present case is indistinguishable.
Finally, while the majority proclaim that the lesser offense need not be charged in every manslaughter case, I am disturbed by their conclusion that the evidence here is stronger than that in People v Stanfield (36 NY2d 467). In Stanfield, as the majority recognize, the victim did not view Stanfield’s actions as creating a risk of harm. However, as noted earlier, just prior to being stabbed, the victim here unequivocally objected. Therefore, viewing the objective indications of defendant’s state of mind to corroborate defendant’s own subjective articulation, as the majority would have us do, it can only be concluded that the victim made defendant aware of the risk and defendant consciously disregarded it. Hence, a lesser charge was not warranted by the evidence.
Courts should not invite juries to reach unwarranted or compromised verdicts by inappropriately submitting lesser charges to them. Such charges are "justified only where there is some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one” (People v Mussenden, 308 NY 558, 563, and the cases cited therein; People v Stanfield, 36 NY2d 467, supra). There being no proper evidentiary basis for the lesser charge here, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jones, Wachtler, Fuchs-berg and Cooke concur with Judge Jasen; Judge Gabrielli dissents and votes to affirm in a separate opinion.
Order reversed, etc.