■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GARY L. WAITE, Respondent. [969 NYS2d 624]—

Lahtinen, J.P. Appeal from an order of the County Court of Warren County (Hall Jr., J.), entered October 18, 2012, which partially granted defendant's motion to dismiss the indictment.

Defendant's 15-month-old son died as a result of head injuries sustained while in defendant's custody. A grand jury indicted defendant on charges of murder in the second degree (depraved indifference murder of a child), manslaughter in the second degree and endangering the welfare of a child. Defendant moved to dismiss the indictment. County Court denied the motion as to the counts of manslaughter and endangering the welfare of a child, but granted it with respect to the murder count. The People appeal.

In reviewing a motion to dismiss an indictment, courts view the evidence in a light most favorable to the People and determine only whether the evidence presented to the grand jury was legally sufficient (see People v Jennings, 69 NY2d 103, 114 [1986]; see also People v Galatro, 84 NY2d 160, 163-164 [1994]). "In the context of grand jury proceedings, 'legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt' " (People v Mills, 1 NY3d 269, 274 [2003], quoting People v Bello, 92 NY2d 523, 526 [1998]; see People v Jennings, 69 NY2d at 115). "The reviewing court's inquiry is limited to whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes" (People v Bello, 92 NY2d at 526 [internal quotation marks and citation omitted]; see People v Swamp, 84 NY2d 725, 730 [1995]). "[I]f the prosecutor has established a prima facie case, the evidence is legally sufficient even though its quality or weight may be so dubious as to preclude indictment or conviction pursuant to other requirements" (People v Jennings, 69 NY2d at 115 [internal quotation marks and citations omitted]).

Defendant was charged under a statutory provision (see Penal Law § 125.25 [4]) that was added in 1990 (see L 1990, ch 477, § 4) to address recognized inherent difficulties in proving an appropriate level of criminality for severe child abuse causing death that was recklessly perpetrated by an adult upon a vulnerable infant (see e.g. Assembly Mem in Support, Bill Jacket, L

1990, ch 477; Letter from Assembly Member James R. Tallon, Jr. in Support, Bill Jacket, L 1990, ch 477). Although since such time the element of depraved indifference has been judicially refined (*see e.g. People v Feingold*, 7 NY3d 288, 291-294 [2006]), nonetheless numerous recent cases have upheld convictions after jury trials of depraved indifference murder of an infant by an adult (*see e.g. People v Barboni*, 21 NY3d 393 [2013]; *People v McLain*, 80 AD3d 992 [2011], *lv denied* 16 NY3d 897 [2011]; *People v James*, 70 AD3d 1052 [2010], *lv denied* 14 NY3d 888 [2010]; *People v Williams*, 54 AD3d 599 [2008], *lv denied* 11 NY3d 901 [2008]; *People v Griffin*, 48 AD3d 1233 [2008], *lv denied* 10 NY3d 840 [2008]; *People v Ford*, 43 AD3d 571 [2007], *lv denied* 9 NY3d 1033 [2008]; *see generally* Morris, Black & Muldoon, Criminal Law in New York § 5:9 [4th ed]). It is now established that depraved indifference constitutes "a culpable mental state which must be proven by the People" (*People v Matos*, 19 NY3d 470, 477 [2012]; *see People v Feingold*, 7 NY3d at 296), and it is "best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (*People v Suarez*, 6 NY3d 202, 214 [2005]; *accord People v Feingold*, 7 NY3d at 296).

Here, defendant had the 15-month-old infant in his exclusive care from about 11:00 a.m. to 6:00 p.m. His statement to police initially claimed that between 2:00 p.m. and 3:00 p.m. the child fell off the couch onto the floor cutting his lip. He then acknowledged that he left out some information in his statement, including that 20 to 30 minutes after the first fall off the couch he "got frustrated" because the infant "wouldn't stop bugging out" so he "tossed him" to one end of the couch where the infant bounced off the couch, striking his head on the hardwood floor. Defendant further added to his statement that, at about 5:40 p.m., the infant tripped while walking, hitting his face on the metal leg of a chair.

Defendant's evolving story of a fall, toss and then trip as the source of injuries was seriously challenged by the testimony of the initial treating physician. The doctor opined that the infant's extensive head injuries were not consistent—individually or collectively—with events described by defendant. The doctor stated that the child sustained injuries causing a "massively swollen brain." He indicated that the infant's injuries were more akin to being in a car accident at 60 miles per hour with no seat belt and the head hitting the windshield or falling from a 10-story building. The infant was quickly airlifted to Albany Medical

Center, but doctors there were unable to save him despite removing parts of his skull and even portions of his brain as it continued swelling. In addition, the individual who lived below defendant's upstairs apartment recalled hearing a noise that was "really loud, loud enough to shake walls," which he characterized as "sound[ing] like a full grown man falling on the floor."

Although proving beyond a reasonable doubt that defendant's conduct satisfied the mens rea requirements for depraved indifference will undoubtedly present the People with a significant challenge at trial, legal sufficiency in the context of a grand jury proceeding does not require such a high standard of proof. Indeed, a jury should be allowed to "determine whether the record supports an inference that the requisite mens rea was present" by considering a defendant's actions and the surrounding circumstances (*People v Baker*, 20 NY3d 354, 360 [2013]; *see People v Weaver*, 16 NY3d 123, 128 [2011]; *People v Todaro*, 26 NY2d 325, 328-329 [1970]; *see also People v Johnson*, 106 AD3d 1272,1278 [2013]). Exactly what transpired and when, as well as defendant's state of mind and the real reasons for defendant's phone calls to others regarding the child during the afternoon, may never be fully known, but, at a minimum, implicate credibility questions that should be resolved by the trier of fact at trial. A logical inference from the proof, particularly the treating doctor's testimony, could be that the injuries that defendant inflicted upon the infant were immediately and obviously very serious and, despite such fact, defendant delayed summoning appropriate care as he engaged in communication aimed at minimizing both his conduct and the gravity of the infant's injuries. Stated another way, a defendant who inflicts severe injuries upon a child and then attempts to weave a story over several hours to save himself while the child suffers is hardly less callously indifferent to the child's life than one who waits and eventually dispassionately reports the child's condition (*cf. People v Barboni*, 21 NY3d 393, 402-403 [2013]). The evidence before the grand jury, viewed most favorably to the People, established a prima facie case for depraved indifference murder.

McCarthy, Spain and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, by reversing so much thereof as partially granted defendant's motion and dismissed count 1 of the indictment; motion denied in its entirety and said count reinstated; and, as so modified, affirmed.