People v Marin (2018 NY Slip Op 05942)





People v Marin


2018 NY Slip Op 05942


Decided on August 29, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 29, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
ROBERT J. MILLER
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.


2015-09995
 (Ind. No. 1029/10)

[*1]The People of the State of New York, respondent,
v
Maximo Marin, appellant.


Paul Skip Laisure, New York, NY (Benjamin S. Litman of counsel), for appellant.
Richard A. Brown, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, and Hannah X. Collins of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Ronald D. Hollie, J.), rendered October 3, 2011, convicting him of reckless endangerment in the second degree and assault in the third degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the facts, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent with CPL 160.50.
This case arises out of an incident occurring on December 15, 2009, when the defendant inadvertently shot his friend Fernando Morales in the leg. At the joint trial of the defendant and Morales, who was charged, inter alia, with criminal possession of a weapon in the second degree, the People relied on statements given to the police by Morales and the defendant. Morales testified in his own defense.
According to Morales, he found a gun on a park bench. The gun was wrapped inside a paper bag, which was inside a black grocery bag. Morales was concerned about the safety of children in the park and intended to bring the gun to a police precinct station house. Before doing so, Morales first stopped at the defendant's home, which was near the station house, to ask the defendant to accompany him to the station house. When Morales arrived at the defendant's home, he placed the bag containing the gun on a shelf, and then greeted the defendant and the defendant's friend, who were both drinking beer. Morales informed the defendant that he had found the gun. Morales then got a beer and sat down on a futon. Morales eventually fell asleep. He awoke when he felt a burning pain in his leg. Morales saw the defendant holding the gun, and asked, "[W]hat the hell did you just do?" The defendant, who was looking at the gun, appeared "scared," and said, "I'm sorry." The defendant then went downstairs and placed the gun in the garbage can. After Morales tended to his leg, he went downstairs and took the gun out of the garbage can, hailed a taxi cab, and brought the gun home with him. Later, Morales contacted the defendant and asked him to accompany him to the hospital, which the defendant did.
Morales was treated at the hospital, and X rays revealed 15 to 20 metallic pellets in the right knee and femur consistent with a gunshot wound.
The defendant's statement to the police was consistent with Morales's version of [*2]events. The defendant stated that, after Morales fell asleep on the futon, he wanted to see the firearm so he picked it up. While he was holding it, "it a shot [sic]." He stated that he accidentally shot his friend in the leg.
The gun was recovered from Morales's home. The defendant consented to a search of his home, and no weapons or ammunition were found inside. The People's firearms expert testified that he needed to open the gun in order to determine whether it was loaded.
The jury found the defendant guilty of reckless endangerment in the second degree (Penal Law § 120.20) and assault in the third degree (Penal Law § 120.00[2]). The defendant appeals from the judgment of conviction, arguing, inter alia, that the jury's verdict, specifically its finding that the defendant acted recklessly, was against the weight of the evidence.
Upon a defendant's request, this Court must conduct a weight of the evidence review (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348). "In conducting our weight of the evidence review, we have a responsibility to affirmatively review the record, independently assess all of the proof, substitute our own credibility determinations for those made by the jury in an appropriate case, determine whether the jury's determination was factually correct, and acquit a defendant if we are not convinced that the jury was justified in finding that guilt was proven beyond a reasonable doubt" (People v Fonerin, 159 AD3d 717, 718; see People v Delamota, 18 NY3d 107, 116-117; People v Danielson, 9 NY3d at 348). "[W]eight of the evidence review requires a court first to determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (People v Danielson, 9 NY3d at 348).
To convict the defendant of reckless endangerment in the second degree, the People were required to prove beyond a reasonable doubt that the defendant recklessly engaged in conduct which created a substantial risk of serious physical injury to another person (see Penal Law § 120.20). To convict the defendant of assault in the third degree, the People were required to prove beyond a reasonable doubt that the defendant recklessly caused physical injury to another person (see Penal Law § 120.00[2]).
"A person acts recklessly with respect to a result or to a circumstance . . . when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05[3]). In determining whether a defendant acted recklessly, "it is defendant's perception or nonperception of the risk of harm which is controlling" (People v Licitra, 47 NY2d 554, 559 [internal quotation marks omitted]). However, "objective evidence of the surrounding circumstances may be weighed in making the factual determination" (id. at 559). "Among the factors to be considered in a case such as this are the defendant's familiarity with weapons in general, as well as the particular gun, and his knowledge of whether the gun is likely to be loaded" (id.; see People v Stanfield, 36 NY2d 467, 472; cf. People v Leonardo, 89 AD2d 214, 218, affd 60 NY2d 683).
Here, the People failed to prove beyond a reasonable doubt that the defendant was aware of and consciously disregarded a substantial risk that his conduct would cause physical injury to another person. The People did not introduce evidence that the defendant was familiar with weapons, or the particular gun. Indeed, the gun was brought to the defendant's home by Morales, and it is undisputed that the gun discharged as the defendant handled it out of curiosity. There was no evidence from which it could be inferred that the defendant knew the gun was loaded with live ammunition, or even knew how the particular gun operated. There was no evidence introduced that the defendant was aware of and consciously disregarded the risk that the gun might misfire (see People v Evans, 104 AD3d 1286, 1287). Indeed, Morales testified that the defendant appeared "scared" when the gun discharged and that the defendant immediately stated that he was "sorry." The defendant attempted to dispose of the gun and helped the victim get medical care. Contrary to the People's contention, there was no testimony that the defendant was pointing the gun at Morales when it discharged, and there was no evidence introduced establishing that the only way the pellets could have struck Morales's leg was by pointing the gun directly at Morales.
Upon the exercise of our factual review power (see CPL 470.15), we determine that an acquittal of reckless endangerment in the second degree and assault in the third degree would not have been unreasonable. Giving the evidence the weight it should be accorded, we find that the People failed to establish, beyond a reasonable doubt, that the defendant recklessly engaged in conduct which created a substantial risk of serious physical injury to another person (see Penal Law § 120.20), or that the defendant recklessly caused physical injury to another person (see Penal Law § 120.00[2]). Thus, we determine that the jury was not justified in finding the defendant guilty of reckless endangerment in the second degree and assault in the third degree beyond a reasonable doubt. Accordingly, the judgment must be reversed and the indictment dismissed (see generally People v Romero, 7 NY3d 633).
In light of our determination, we need not address the defendant's remaining contention.
MILLER, BARROS and CONNOLLY, JJ., concur.
RIVERA, J.P., dissents, and votes to affirm the judgment, with the following memorandum:
I respectfully dissent and vote to affirm the judgment of conviction.
On December 15, 2009, the defendant shot the victim in the right knee with a gun. According to a statement provided by the defendant to law enforcement, the defendant wanted to "see" the gun so "he picked it up," and "while he was holding it a shot [sic]—he accidently shot his friend in the leg." The defendant was convicted, upon a jury verdict, of reckless endangerment in the second degree (Penal Law § 120.20) and assault in the third degree (Penal Law § 120.00[2]). He was sentenced to three years' probation.
"[W]eight of the evidence review requires a court first to determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 348). Contrary to the determination of my colleagues in the majority, I am satisfied that the verdict of guilt is not against the weight of the evidence (see CPL 470.15[5]; People v Romero, 7 NY3d 633). According great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410), in my view, a jury could logically conclude that the defendant possessed the culpable mental state of recklessness.
"A person acts recklessly with respect to a result . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur . . . [and] [t]he risk [is] of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05[3]). Here, the defendant knew that the object he was holding was a gun. Even someone who is presumably unfamiliar with guns is well-acquainted with a gun's potential danger and, in particular, aware of the risks associated with handling a gun, namely, that the gun may be loaded, may be discharged, and, upon discharging, may result in injury or death. The evidence adduced at trial was also factually sufficient to show that the defendant consciously disregarded that "substantial and unjustifiable" risk by handling the gun in such a manner so as to cause it to discharge and strike the victim (see People v Licitra, 47 NY2d 554, 559 ["Although the discharge of the weapon may well have been unintentional, the jury was entitled to consider whether the risk created by defendant's actions was substantial, unjustifiable and constituted a gross deviation from the standard of conduct that a reasonable person would have observed"]; Matter of Koron B., 303 AD2d 314 [determining that the Family Court's juvenile delinquency finding was not against the weight of the evidence where the appellant "removed the magazine from a pistol, pointed the pistol in the complaining witness's general direction and squeezed the trigger, causing a chambered round to strike the complaining witness," as the evidence warranted the conclusion that the "appellant consciously disregarded the substantial and unjustifiable risk that, due to his inexperience with firearms, he might be mistaken as to whether the pistol was still capable of firing"]).
Accordingly, I find that the evidence is of such weight and credibility as to convince me that the jury was justified in finding the defendant guilty beyond a reasonable doubt. There is no basis to set aside the jury's verdict. Accordingly, I would affirm the judgment.
ENTER:
Aprilanne Agostino
Clerk of the Court