People v Gaworecki (2019 NY Slip Op 05725)





People v Gaworecki


2019 NY Slip Op 05725


Decided on July 18, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 18, 2019

110055

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Appellant,
v
RICHARD B. GAWORECKI, Respondent.

Calendar Date: April 29, 2019

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Pritzker, JJ.


Stephen K. Cornwell Jr., District Attorney, Binghamton (Stephen D. Ferri of counsel), for appellant.
Gorman Law, PLLC, Binghamton (Veronica M. Gorman of counsel), for respondent.



MEMORANDUM AND ORDER
Egan Jr., J.P.
Appeal from an order of the County Court of Broome County (Dooley, J.), entered December 19, 2017, which partially granted defendant's motion to dismiss the indictment.
Defendant was charged in a four-count indictment with the crimes of criminal sale of a controlled substance in the third degree, manslaughter in the second degree, criminal possession of a controlled substance in the seventh degree and criminally possessing a hypodermic instrument. With respect to the manslaughter count, the People alleged that defendant sold the victim heroin, which resulted in his subsequent overdose and death. Defendant thereafter filed an omnibus motion seeking to, among other things, dismiss the indictment, alleging that the evidence before the grand jury was not legally sufficient to establish the charged offenses or any lesser included offenses and that the grand jury instructions were improper. County Court partially granted defendant's motion by dismissing the count of manslaughter in the second degree. The People appeal.
In determining whether dismissal of a count or counts of an indictment is warranted on legal sufficiency grounds, the court must view the evidence in a light most favorable to the People and assess whether the facts presented to the grand jury, if accepted as true, along with the logical inferences to be drawn therefrom, are legally sufficient to establish each and every element of the offense or offenses charged (see CPL 70.10 [1]; 210.20 [1] [b]; People v Grant, 17 NY3d 613, 616 [2011]; People v Deegan, 69 NY2d 976, 978 [1987]; People v Carlin, ___ AD3d ___, ___, 2019 NY Slip Op 04788, *1 [2019]). "In the context of grand jury proceedings, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (People v Mills, 1 NY3d 269, 274 [2003] [internal quotation marks and citations omitted]; see People v Swamp, 84 NY2d 725, 730 [1995]; People v Park, 163 AD3d 1060, 1061-1062 [2018]). Thus, "if the [People have] established a prima facie case, the evidence is legally sufficient even though its quality or weight may be so dubious as to preclude indictment or conviction pursuant to other requirements" (People v Jennings, 69 NY2d 103, 115 [1986] [internal quotation marks [*2]and citations omitted]; see People v Deegan, 69 NY2d at 979; People v Waite, 108 AD3d 985, 985 [2013]; People v Raymond, 56 AD3d 1306, 1307 [2008], lv denied 12 NY3d 820 [2009]).
As relevant here, in order to find a defendant guilty of manslaughter in the second degree, the People are required to show that he or she "recklessly cause[d] the death of another person" (Penal Law § 125.15 [1]). "A person acts recklessly with respect to a result or to a circumstance . . . when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists" (Penal Law § 15.05 [3]). The testimony before the grand jury established that defendant sold the victim five blue packets of heroin on July 20, 2017. Less than an hour after the sale, defendant sent a text message to the victim stating, "I told you bro. I hooked you up. Just be careful." Later that afternoon, the victim's ex-girlfriend snorted half of one of the blue packets of heroin but found it to be "really strong and potent" and flushed the rest down the toilet [FN1]. Another of defendant's customers purchased two blue packets of heroin from defendant, but subsequently refused to purchase any additional heroin from him, specifically informing defendant that the heroin in the blue packets was "strong and it almost killed [him]." The very next morning — less than two days after purchasing the blue packets of heroin from defendant — the victim was found dead. Police searching the victim's bedroom found empty blue and green packets of heroin, and an autopsy performed on the victim revealed the presence of "lethal" levels of morphine, the compound that is produced when the body metabolizes heroin, and 6-Monoacetylmorphine, a chemical byproduct that is specific to heroin, in the victim's blood. The coroner determined that the cause of the victim's death was "heroin toxicity acute." Following the victim's death, defendant told police officers that he had warned the victim "to be wicked careful." Upon his arrest, defendant was found to be in possession of blue packets containing both heroin and fentanyl.
Although the People have the burden of proving at trial that a defendant is guilty of manslaughter in the second degree beyond a reasonable doubt, "legal sufficiency in the context of the grand jury proceeding does not require such a high standard of proof" (People v Waite, 108 AD3d at 987; see People v Swamp, 84 NY2d at 732; People v Spratley, 152 AD3d 195, 197 [2017]; People v Roth, 141 AD3d 1090, 1091 [2016], lv denied 28 NY3d 936 [2016]). Viewing the evidence in a light most favorable to the People, we find that the testimony before the grand jury with respect to defendant's conduct, the surrounding circumstances and the reasonable inferences to be drawn therefrom provided sufficient factual support for each and every element of the charge of manslaughter in the second degree (see People v Galle, 77 NY2d 953, 955-956 [1991]; People v Waite, 108 AD3d at 987). Given defendant's knowledge of the potency of the drugs that he was distributing and their potential lethality, it is evident that the nature of the risk involved was of such degree "that defendant's failure to perceive it constituted a gross deviation from the standard of care that a reasonable person would observe in the situation" and that his actions were a sufficiently direct cause of the victim's death for him to face the judgment of a jury (People v Galle, 77 NY2d at 955-956 [internal quotation marks, brackets and citations omitted]; see People v Cruciani, 36 NY2d 304, 305-306 [1975]; People v Stan XuHui Li, 155 AD3d 571, 574-577 [2017], lv granted 31 NY3d 1119 [2018]; People v Roth, 141 AD3d at 1091; compare People v Bianco, 67 AD3d 1417, 1418-1419 [2009], lv denied 14 NY3d 797 [2010]; People v Pinckney, 38 AD2d 217, 218 [1972], affd 32 NY2d 749 [1973]).
Lynch and Pritzker, JJ., concur.




Mulvey, J. (dissenting).


Because the evidence before the grand jury was legally insufficient to support the count of manslaughter in the second degree or the lesser included offense of criminally negligent [*3]homicide, County Court properly dismissed that count. "To dismiss an indictment or counts thereof on the basis of insufficient evidence before a grand jury, a reviewing court must consider whether the evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a [trial] jury" (People v Park, 163 AD3d 1060, 1061 [2018] [internal quotation marks and citations omitted]). "In the context of grand jury proceedings, 'legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt'" (People v Mills, 1 NY3d 269, 274 [2003], quoting People v Bello, 92 NY2d 523, 526 [1998]; see People v Park, 163 AD3d at 1061; People v Roth, 141 AD3d 1090, 1090 [2016], lv denied 28 NY3d 936 [2016]; People v Waite, 108 AD3d 985, 985 [2013]). "The reviewing court's inquiry is limited to whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes, and whether the [g]rand [j]ury could rationally have drawn the guilty inference" (People v Bello, 92 NY2d at 526 [internal quotation marks and citations omitted]; accord People v Park, 163 AD3d at 1061).
Pursuant to Penal Law § 125.15 (1), "[a] person is guilty of manslaughter in the second degree when . . . [h]e [or she] recklessly causes the death of another person." "A person acts recklessly with respect to a result . . . described by a statute defining an offense when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur . . .. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]; see People v Li, 155 AD3d 571, 574 [2017], lv granted 31 NY3d 1119 [2018]). Thus, to establish that a defendant is guilty of manslaughter in the second degree, the People must prove "the creation of a substantial and unjustifiable risk; an awareness and disregard of the risk on the part of [the] defendant; and a resulting death" (People v Licitra, 47 NY2d 554, 558 [1979]; accord People v Raymond, 56 AD3d 1306, 1307 [2008], lv denied 12 NY3d 820 [2009]; People v Phippen, 232 AD2d 790, 790 [1996]). Criminally negligent homicide is a lesser included offense of manslaughter in the second degree (see People v Erb, 70 AD3d 1380, 1380 [2010], lv denied 14 NY3d 840 [2010]). Pursuant to Penal Law § 125.10, "[a] person is guilty of criminally negligent homicide when, with criminal negligence, he [or she] causes the death of another person." "A person acts with criminal negligence . . . when he [or she] fails to perceive a substantial and unjustifiable risk that" a specified result will occur, where that risk is "of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation" (Penal Law § 15.05 [4]; see People v Galle, 77 NY2d 953, 955-956 [1991]).
Causation is an essential element of both manslaughter in the second degree and criminally negligent homicide (see People v Galle, 77 NY2d at 955; People v Raymond, 56 AD3d at 1307; People v Phippen, 232 AD2d at 791; see also People v Li, 155 AD3d at 576-577). Causation is determined by finding that the defendant's conduct "set in motion the events that led to the victim['s] death[]" and that the "defendant's conduct was a sufficiently direct cause of the ensuing death[]" (People v Ballenger, 106 AD3d 1375, 1377 [2013] [internal quotation marks and citations omitted], lv denied 22 NY3d 995 [2013]; see People v Phippen, 232 AD2d at 791). A defendant's conduct will qualify "as a sufficiently direct cause when the ultimate harm should have been reasonably foreseen" (People v Ballenger, 106 AD3d at 1377 [internal quotation marks and citations omitted]; see People v Galle, 77 NY2d at 955-956; People v Phippen, 232 AD2d at 791; see e.g. People v Roth, 141 AD3d at 1091).
For a defendant to be convicted of manslaughter in the second degree or criminally negligent homicide where a person dies of a drug overdose, the People must prove more than the mere fact that the defendant illegally sold that person a dangerous drug (compare People v Pinckney, 38 AD2d 217, 220-221 [1972], affd 32 NY2d 749 [1973], and People v Reed, 48 Misc 3d 782, 783 [County Ct, Seneca County 2015], with People v Galle, 77 NY2d at 955-956; see People v Li, 155 AD3d at 574-577; People v Roth, 141 AD3d at 1090-1091; People v Cruciani, 44 AD2d 684, 684-685 [1974], affd 36 NY2d 304 [1975]). For example, such additional circumstances have been found where: the defendant twice injected cocaine into the victim when the defendant knew that the victim intended to continue taking injections of that drug until their large supply was exhausted (see People v Galle, 77 NY2d at 955-956); the defendant was a [*4]physician who knowingly prescribed the victim a lethal dose of prescription drugs without conducting proper examinations to verify the medical need for such prescriptions (see People v Li, 155 AD3d at 575-577); the defendant provided a large quantity of drugs to a minor and refused to let anyone call for medical assistance or answer a call from the victim's mother (see People v Roth, 141 AD3d at 1091); and the defendant intravenously administered heroin to the victim knowing that she was already under the influence of another drug and was unable to walk or talk properly (see People v Cruciani, 36 NY2d 304, 305-306 [1975]; compare People v Bianco, 67 AD3d 1417, 1418-1419 [2009], lv denied 14 NY3d 797 [2010]; People v Pinckney, 38 AD2d at 220-221). Relevant here, "[a]lthough it is a matter of common knowledge that the use of heroin can result in death, it is also a known fact that an injection of heroin into the body does not generally cause death" (People v Pinckney, 38 AD2d at 219).[FN2]
The evidence presented to the grand jury established that on July 20, 2017, defendant sold the victim five blue packets of heroin for $100. Later that day, defendant sent the victim a text message referencing the sale and telling him to "be careful." Defendant also later informed the police that he advised the victim to be careful. The victim gave one packet of the heroin to his ex-girlfriend. Although she testified that she believed the heroin in this packet was two or three times more potent than the heroin she previously used, there is no indication that she conveyed this information to defendant. Another person who purchased heroin from defendant approximately one week earlier had been told by defendant that the drugs he purchased were very strong; that person had an adverse reaction when he used those drugs but did not advise defendant of such until after July 20, the date that defendant completed his final sale to the victim. On July 22, 2017, police officers responded to the victim's home and were unable to resuscitate him. The coroner testified that the victim died from acute heroin toxicity. Some empty blue and green packets were found in the victim's room, as well as hypodermic syringes and a pill. The record does not disclose how many packets were found there, although some were later tested and determined to contain heroin residue.
Viewing the evidence in the light most favorable to the People, the evidence failed to prove either that defendant's sale of heroin to the victim created a substantial and unjustifiable risk of death, through proof of additional circumstances, or that the sale of heroin was a sufficiently direct cause of the victim's death. There was no evidence presented that the victim overdosed on the heroin that defendant sold him. Police found green and blue packets of heroin in the victim's room, but there was no evidence as to which packet or packets the victim took heroin from on the night he overdosed, nor how much heroin he used that night. The victim could have used heroin from the green, blue or both green and blue packets on the night that he overdosed. Further, there was no evidence that defendant sold heroin in green packets, or that defendant was the only source from whom the victim obtained heroin.
Although the evidence established that the victim's death was attributed to a heroin overdose, the evidence also established that defendant sold the victim heroin two days prior to the victim's death and that defendant was not present when the victim overdosed (see People v Bianco, 67 AD3d at 1418-1419; People v Pinckney, 38 AD2d at 220-221; compare People v Galle, 77 NY2d at 955-956; People v Li, 155 AD3d at 575-577; People v Roth, 141 AD3d at 1091; People v Cruciani, 36 NY2d at 305). Moreover, no evidence was presented establishing that defendant was aware that the heroin he sold to the victim would result in the victim's death. In this regard, the testimony of the ex-girlfriend regarding the strength of the heroin is nothing more than mere speculation, and the other user's warning to defendant about the heroin did not [*5]occur until after defendant had sold the heroin to the victim. Although defendant warned the victim to "be careful," this is not enough to hold defendant criminally liable for the victim's death (see People v Pinckney, 38 AD2d at 220-221). Accordingly, as the evidence presented to the grand jury was legally insufficient to establish that defendant committed manslaughter in the second degree or the lesser included offense of criminally negligent homicide, we would affirm.
Clark, J., concurs.
ORDERED that the order is modified, on the law, by reversing so much thereof as partially granted defendant's motion; motion denied in its entirety; and, as so modified, affirmed.



Footnotes

Footnote 1: According to the ex-girlfriend, she and the victim had obtained green packets of heroin the week prior and ingested same. With respect to the relative potency of the heroin, she indicated that "two or three of the green [packets] would've been equivalent to one of the blue [packets]."

Footnote 2: The concurrence in Pinckney made a statement that was prescient in 1972 and is equally applicable today: "While there has recently been a substantial increase in deaths from narcotics, the proportion of such deaths to the number of times narcotics are currently being used by addicts and for legal medical treatment is not nearly great enough to justify an assumption by a person facilitating the injection of a narcotic drug by a user that the latter is thereby running a substantial and unjustifiable risk that death will result from that injection" (People v Pinckney, 38 AD2d at 223-224 [Shapiro, J., concurring]).